Walter J. BLAIR, Petitioner,

v.

Bill ARMONTROUT, Warden of the
Missouri State Penitentiary,
Respondent,

and

William H. Webster, Attorney General
of the State of Missouri, Additional
Respondent.

No. 85–0155–CV–W–5.

United States District Court,
W.D. Missouri, W.D.

Aug. 8, 1985.

See also, D.C., 604 F.Supp. 723.

Bernard Rhodes, Gage & Tucker, Kansas City, Mo., for petitioner.

Office of the Attorney General, Jefferson City, John B. Williams, Jay D. Haden, Office of the County Counselor, Kansas City, Mo., for respondents.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Pending before the Court is Petitioner Walter Blair's motion to disqualify the Attorney General's Office of the State of Missouri from representing the Respondents in this federal habeas corpus action pursuant to 28 U.S.C. § 2254. Blair challenges the constitutionality of his conviction on capital murder and subsequently imposed death sentence. Blair contends that disqualification is required by virtue of the fact that his former attorney who rep-

resented Petitioner in connection with his state post-conviction remedies is now employed as an Assistant Attorney General with the Criminal Division of the Attorney General's Office. For the following reasons, Blair's motion will be granted, and the Office of the Attorney General is disqualified from all subsequent participation in this action.

## I. Factual Background

The facts relevant to the Petitioner's motion are not disputed by the parties. Blair was convicted of capital murder on January 14, 1981, in the Circuit Court of Jackson County, Missouri. On October 17, 1980, Blair was sentenced to death. At trial, Blair was represented by two private attorneys, Phillip Schwarz and Gerald Handley, who were appointed by the Court. Handley and Schwarz represented Blair on his direct appeal to the Missouri Supreme Court, which affirmed Blair's conviction and sentence. *See State v. Blair*, 638 S.W.2d 739 (Mo. en banc 1982). Following the Missouri Supreme Court's affirmance, the Jackson County Circuit Court on September 27, 1982 appointed Gary L. Gardner, an assistant public defender for Jackson County, to represent Blair. On December 6, 1982, Blair filed a petition for certiorari with the United States Supreme Court which was signed by Gardner as counsel of record. Although the certiorari petition also bore the names of Handley and Schwarz, Gardner had assumed the primary role as counsel for Blair. The State was represented on direct appeal in the certiorari proceeding by John Morris, an assistant attorney general.

Following the denial of the certiorari petition by the United States Supreme Court, Gardner was the sole counsel for Blair in his Rule 27.26 proceeding before the Jackson County Circuit Court. During the course of the Rule 27.26 proceeding, Gardner met with Blair, corresponded with Blair concerning factual and legal issues related to the case, took the deposition of the trial prosecutor, and submitted briefing and presented evidence at the Rule 27.26 hearing. The State was represented by the Jackson County Prosecutor's Office in connection with the Rule 27.26 proceeding.

Blair's Rule 27.26 motion was denied by the Circuit Court on July 7, 1983. Thereafter, Gardner represented Blair on the appeal of the denial of the Rule 27.26 motion, and filed a brief with the Missouri Court of Appeals for the Western District. The State was again represented by counsel Morris on the appeal. On July 31, 1984, the denial of Blair's Rule 27.26 motion was affirmed. *Blair v. State*, 683 S.W.2d 269 (Mo.App.W.D.1984) (unpublished memorandum opinion). Following that affirmance, Gardner filed a motion on Blair's behalf with the Western District Court of Appeals requesting a rehearing or, in the alternative, a transfer. That motion was filed on August 8, 1984, and apparently was Gardner's final official act as Blair's counsel.

Gardner left the Jackson County Public Defender's office on August 31, 1984, and commenced employment as an Assistant Attorney General for the State of Missouri on September 1, 1984. Gardner initially was assigned to the criminal appeals unit of the Criminal Division, and in that capacity Gardner briefed and argued state felony appeals in cases other than those arising out of Jackson County. In February of 1985, Gardner was transferred to the litigation unit of the Criminal Division, which represents law enforcement state agencies in federal and state civil actions.

Following Gardner's withdrawal as counsel for Blair, the motion for rehearing or for transfer was denied by the Western District Court of Appeals on October 2, 1984. Thereafter, the Missouri Supreme Court denied the subsequent application for transfer on January 15, 1985. Blair was represented in this application by Sean O'Brien, an assistant public defender. On February 11, 1985, Blair filed a *pro se* petition for a writ of habeas corpus. On February 26, 1985, this Court appointed Bernard Rhodes as counsel for Blair on habeas corpus review.

In their response to the motion to disqualify, Respondents assert that Counsel

Morris, as Chief Counsel of the Criminal Division, has authority over Gardner but does not directly supervise Gardner's cases or activities. By affidavit, Counsel Morris states that he and Gardner have not discussed any confidential matter of any kind in connection with Blair's litigation, nor has Gardner discussed the case with anyone in the Attorney General's office.

## II. Analysis

Blair contends that the disqualification of the Attorney General's office is required pursuant to Canons 4 and 9 of the Code of Professional Responsibility. *See* Mo.Sup. Ct.R. 4. According to Canon 4, a lawyer should preserve the confidences and secrets of a client. Canon 9 states that a lawyer should avoid even the appearance of impropriety. Blair does not suggest that Gardner has acted improperly or unethically; rather, Blair contends that the appearance of impropriety would arise if the Attorney General's office is allowed to defend this habeas corpus litigation with Blair's former counsel now employed as an Assistant Attorney General. In response, the Attorney General argues that no client confidences have been shared, and that government legal offices are not subject to vicarious disqualification simply because a staff member is ineligible to participate in a case.

In support of its argument, the Attorney General relies on ABA Formal Opinion 342, published at 62 ABA Journal 517 (1976), and quoted in *United States v. Caggiano*, 660 F.2d 184, 190 (6th Cir.1981). According to Formal Opinion 342, where a lawyer leaves a private practice for government service, other lawyers in the government office need not be disqualifed from handling matters in which their new associate was involved in his former practice. *See Caggiano*, 660 F.2d at 190. In *Caggiano*, the Sixth Circuit stated that the rationale for Formal Opinion 342 was "[t]here is, of course, quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government. The ABA Committee

on Professional Ethics recognized there are substantial reasons against treating the government as a private enterprise in its Formal Opinion 342...." 660 F.2d at 190.

■ Initially, the Court notes that although Formal Opinion 342 is instructive and entitled to some persuasive value, it remains the ultimate responsibility of the District Court to supervise the members of its bar in light of applicable law. *See Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 605 (8th Cir.1977). "The dispatch of this duty is discretionary in nature and the finding of the district court will be upset only upon a showing that an abuse of discretion has taken place." *Id.* "Rigid rules [applicable to the canons of the Code of Professional Responsibility] can be sterile and lacking in universal application." *State of Arkansas v. Dean Foods Products, Co., Inc.*, 605 F.2d 380, 383 (8th Cir.1979). Thus, the Court may not be satisfied in merely ending its inquiry with a *pro se* application of Formal Opinion 342. Rather, the Court must consider controlling case law, and "the interest of society in the orderly administration of justice, ... the interest of clients in candid consultation and choice of counsel, and ... the interest of the legal system in its reputational soul." *Id.* "In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir.1977), quoting *Gas-A-Tron of Arizona v. Union Oil Co.*, 534 F.2d 1322, 1324–25 (9th Cir. 1976); *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir.1964).

The Court first notes that the Eighth Circuit has expressly rejected the proposition that there is a valid reason for distinguishing between private firms and government offices for purposes of disqualification analysis. As stated by the Eighth Circuit in *Dean Foods*, "[n]o practical rea-

son exists for differentiating, with respect to disqualification, between a private firm and a group of attorneys and staff members of a state Attorney General's office actively involved in a particular suit. (cite omitted). Though a state would appear to have a special interest in and responsibility for compliance with ethical standards by all lawyers it licenses, we have not taken that interest and responsibility into account here." *Dean Foods*, 605 F.2d at 387 n. 10. Thus, it is clear that the law in this circuit directly conflicts with the rationale supporting Formal Opinion 342, issued three years prior to the Eighth Circuit's opinion in *Dean Foods*. In *Dean Foods*, the Eighth Circuit applied Canon 9's prohibition against the appearance of impropriety and held that the trial court abused its discretion in failing to disqualify certain staff members of the state Attorney General's office who had actively worked with an assistant Attorney General who had previously represented a former client who was the target of a state anti-trust suit. *Id.* at 387. In its decision, the Eighth Circuit expressly did not decide whether the entire Attorney General's staff should be disqualified because such relief was not requested. *Id.* at n. 9.

At least one Missouri state court, however, has addressed the issue and has concluded that an entire prosecutorial office should be disqualified. In *State v. Croka*, 646 S.W.2d 389, 393 (Mo.App.W.D.1983), the Missouri Court of Appeals for the Western District of Missouri reversed defendant Croka's conviction for second degree murder on the grounds that the trial court erred in overruling a motion to disqualify the Saline County prosecutor's office where one of the defendant's court-appointed attorneys subsequently joined the prosecutor's office during the course of the criminal prosecution. The appointed counsel, Gary Busker, had served as Croka's defense counsel during a period of time which included Croka's preliminary hearing. Thereafter, Busker withdrew from Croka's representation due to his appointment as an assistant prosecuting attorney

for Saline County. Croka then moved for the disqualification of the prosecutor's office based on Busker's prior representation. "Inexplicably, the trial court overruled the motion." *Id.* at 392. In reversing, the Court of Appeals noted that "Busker acquired knowledge about the case from Croka while acting as his appointed counsel. When Busker joined the prosecutor's office, that office was thereby disqualified from prosecuting the case irrespective of the assumed facts that Busker revealed no confidences and did not himself participate in the prosecution. The disqualification does not result from information acquired and used to Croka's detriment, but because [the prosecutor's] office was placed in position where continued involvement would create the appearance of impropriety." *Id.* at 393. Thus, the holding in *Croka* makes it clear that Missouri courts have implicitly rejected the substance of Formal Opinion 342 based on the rationale that the appearance of impropriety can be cured only by disqualification of the entire prosecutorial office. Moreover, the reasoning of the *Croka* court is consistent with and a logical extension of the Eighth Circuit's assertion in *Dean Foods* that there is no reason to differentiate, for disqualification purposes, between a private firm and a state attorney general's office.

■ There is considerable authority for disqualification of an entire legal office without regard to whether the other office member had actually been exposed to confidential information presumptively possessed by the attorney who formerly represented the adverse interest. *See Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir.1976). In the instant case, the attorney-client relationship that existed between Gardner and Blair created an irrefutable presumption that confidences were disclosed by the client to the attorney. *Fred Weber, Inc.*, 566 F.2d at 608. Furthermore, Gardner's presumed access to confidential information results in the imputation of that information to others in his

office. *Id.*[1] Thus, "[c]onfidential information possessed by one attorney may or may not have been shared with other members of the firm, but the firm as a whole is disqualified whether or not its other members were actually exposed to the information." *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980). Given "the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys, but also requires disqualification of the entire firm as well as all employees thereof." *United States v. Kitchin,* 592 F.2d 900, 904 (5th Cir.1979) (trial court properly granted prosecution's motion to disqualify criminal defendant's counsel because associate of defendant's attorney had been actively involved on behalf of prosecution at early stage of criminal proceeding). Thus, the scope of the disqualification properly extends to the Attorney General's office as a whole under Canon 4.

█ In addition to the prohibition of Canon 4 against sharing client confidences, the injunction of Canon 9 against the appearance of impropriety can be the sole basis for disqualification. Canon 9 "relates to the entire spectrum of lawyer conduct. That no unethical or untoward act may have occurred is implicit in the Canon's emphasis on 'appearance.' The conduct under scrutiny must, therefore, be evaluated in an 'eye of the beholder' context, and the lawyer must be disqualified when an actual appearance of evil exists, though there be no proof of actual evil." *Fred Weber, Inc.,* 566 F.2d at 609. The Court emphasizes that there is no suggestion that client confidences have actually been shared in this case, and has complete confidence that all counsel of record in this case have avoided and will continue to avoid improper activity. However, the requirement of Canon 9 that "a lawyer avoid even the appearance of impropriety reflects the bar's concern that some conduct which is in fact ethical may appear to the layman as unethical and thereby could erode public confidence in the judicial system or the legal profession." *Woods v. Covington City Bank,* 537 F.2d 804, 813 (5th Cir.1976). "[C]onscious of the need to keep both the public and the private segments of the profession above suspicion, courts have disqualified attorneys under the appearance of evil doctrine even though the record was free of any evidence of wrongdoing." *Id.*

## Conclusion

The Court is compelled to note that "public trust in the confidence with which an attorney receives potential evidence from a client would soon disappear if the lawyer were permitted to establish the same fiduciary relationship with an adverse party." *United States v. Kitchin,* 592 F.2d at 904. "That concern is even greater in a case involving the public's interest in the prosecution of alleged criminal acts as opposed to civil litigation." *Id.*

The same public interest also exists in habeas corpus actions, particularly those challenging convictions resulting in death sentences, because habeas corpus is the only federal vehicle for collateral attack against a state criminal conviction, and because habeas corpus actions directly protect the most valued rights and are of fundamental importance under the constitutional scheme. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). "For a former prosecutor to be associated with the lawyer who represents a person he earlier helped prosecute, even if only at the embryonic state, would likely provoke suspicion and distrust of the judicial process." *Kitchin,* 592 F.2d at 904. Similarly, public suspicion would also arise where an attorney is now associated with an office which is representing the state in a habeas corpus action filed by the attorney's former client who was represented by that attorney during the course

---

**1.** In *Dean Foods,* the Eighth Circuit expressed its concern about the fairness of a "double imputation" analysis. 605 F.2d at 387. No similar concerns exist in this case because Gardner is presumed to have received client confidences, without the application of the imputation theory.

of the former client's direct appeal and state collateral review of his conviction and death sentence. It is fundamental that the public, as well as criminal defendants, should be confident that offices of county prosecutors and the state Attorney General will not be allowed to hire a criminal defendant's former defense counsel and thereafter represent the state in opposing the defendant's appeal or habeas corpus petition. Although the Court is confident that Counsel Gardner and the members of the Attorney General's office would take every step necessary to avoid any actual impropriety, the Court "cannot impart this same confidence on the public by Court order." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 n. 1 (2nd Cir. 1976). Because the appearance of impropriety cannot be cured by guarantees of Gardner's disassociation with this action, the so-called "Chinese wall" approach to the problem is not sufficient. Thus, the Court concludes that the disqualification of the Attorney General's office is also required under Canon 9.[2]

Accordingly, it is hereby

ORDERED that the Petitioner's motion to disqualify the Missouri Attorney General's office from further participation in this suit is granted. It is further

ORDERED that the Respondents obtain substitute counsel, and that substitute counsel enter an appearance within twenty (20) days of this order. It is further

ORDERED that substitute counsel for Respondents file an answer to the petition for habeas corpus relief within thirty (30) days after the entry of appearance. It is further

ORDERED that all other proceedings in this case are stayed pending entry of appearance by substitute counsel for Respondents.

**2.** The Court notes that the respondents have questioned the propriety of this Court's former law clerk participating as co-counsel for the petitioner. It would appear that any relief requested in this regard must be issued in re-

sponse to a motion for recusal. *See United States v. Hollister*, 746 F.2d 420, 425–26 (8th Cir.1984). Respondents have not filed such a motion, and the Court expresses no views as to the merits of the issue.