STATE of Missouri,
Plaintiff-Respondent,

v.

Franklin G. ENDICOTT,
Defendant-Appellant.

No. 14758.

Missouri Court of Appeals,
Southern District,
Division Two.

June 18, 1987.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Janet M. Thompson, Columbia, for defendant-appellant.

PREWITT, Presiding Judge.

Following trial by jury defendant was convicted of kidnapping and sodomy and sentenced as a prior offender to consecutive terms of imprisonment of 15 years for kidnapping and 20 years for sodomy. Defendant appeals.

As the sufficiency of the evidence to support the convictions is not challenged we only relate so much of the evidence as appears relevant to defendant's points claiming error. A woman testified that after making some purchases at a retail store in Joplin she drove her van off the store's parking lot and stopped at a traffic light. While her vehicle was stopped, a man who she identified as defendant grabbed her from behind and took control of the van. He drove it through Joplin and

stopped under a bridge. After struggling with him and being threatened, she partially disrobed. The man then forcibly removed the rest of her clothing and inserted his penis in her rectum. After the sexual attack he drove the van until it ran out of gas. He left the van and when he was out of sight the woman went to a pay phone and called her father who took her to the police station. Defendant testified and denied the incident. He also offered the testimony of alibi witnesses. Other evidence is mentioned in discussing defendant's points.

Defendant contends in his first point that the trial court erred in not granting a mistrial because comments of the assistant prosecuting attorney during the voir dire examination of the jury panel "constituted an indirect reference to appellant's right to remain silent and had the effect of compelling appellant to testify." The prosecutor said:

> Now in this case, as is true in other cases, but particularly in a case like this where there are just two people involved, one on one, you don't normally have an audience, you don't normally have witnesses and we don't in this case, other than the two people involved. And so it's going to boil down to at the end of this trial probably one person's word against another's. But—

The prosecutor was interrupted by defendant's attorney who requested a conference out of the hearing of the jury. At that conference he objected to the comments on the same basis as stated in defendant's first point. After that objection was sustained, defense counsel moved for a mistrial. The trial court denied that request stating:

> I don't think that a mistrial is justified. I really don't think the jury has in any way connected this up with whether or not the defendant is going to testify because there could be other witnesses. I understand that there may be alibi witnesses, and it could be a question of whether they believe the alibi witnesses or the—

When the prosecuting attorney continued his voir dire he stated:

> Ladies and gentlemen, back to what I was attempting to get at, in some cases, and this is one of them, you are going to be required to decide this case based upon whether you believe what some people say or what some other people say. And the numbers may be four to two, and just because there are four say-- ing one thing doesn't necessarily mean that the other two are wrong. In other words, you are the sole judges of the facts and the credibility of the witnesses. And is there anybody who feels like that you can't find something beyond a reasonable doubt solely based upon your judgment of whether that person or another person is telling the truth?

There was no response to that inquiry.

As defendant's excellent counsel states, the language of Article I, § 19 of the Missouri Constitution that "no person shall be compelled to testify against himself in a criminal cause," prohibits not only comments on the failure of a defendant to testify, but also comments which have the effect of compelling a defendant to testify. *State v. Lindsey*, 578 S.W.2d 903, 904 (Mo. banc 1979); *State v. Croka*, 646 S.W.2d 389, 390 (Mo.App.1983). Convictions were reversed in both cases. See also Rule 27.- 05; § 546.270, RSMo 1986.

*Lindsey* and *Croka* involved comments by the prosecuting attorney to the jury panel during voir dire. Those cases state that a defendant electing to testify does not correct the error if the effect of the prosecuting attorney's comments is to coerce the defendant into testifying. *Lindsey*, 578 S.W.2d at 904; *Croka*, 646 S.W.2d at 391.

Trial court rulings on comments made by a prosecutor which do not contain direct and certain references regarding an accused's testimony will not be interfered with on appeal unless the record shows an abuse of discretion to the prejudice of the accused; but when comments are made by a prosecutor which are direct and certain references to the failure of an accused to testify, those comments are reversible error. *State v. Rothaus*, 530 S.W.2d 235, 237 (Mo. banc 1975). From the discussion in

*Rothaus* and the cases cited therein, we conclude that the comment here was not a direct and certain reference and find no abuse in the trial court's discretion in not granting a mistrial.

In upholding a district court's habeas corpus ruling, the court in *Hearn v. Mintzes*, 708 F.2d 1072, 1077 (6th Cir.1983), considered four factors which bear upon the prejudicial effect of a prosecutor's comments on the accused's election not to testify. Those were: (1) whether the comments were "manifestly intended" to reflect on the defendant's silence or of a character that the jury would "naturally and necessarily" take them as such a comment; (2) whether the remarks were isolated or extensive; (3) whether the evidence against the defendant was otherwise overwhelming; and (4) what curative instructions were given and when.

Similar considerations are relevant to determine whether the effect of the prosecutor's comment would be so coercive as to compel the defendant to testify. We cannot say that the comments reflected on the defendant's silence or that they were intended to highlight the possibility that he might not testify. We do not know whether the jury understood them as such but apparently the trial court did not so interpret them. The remarks appear isolated and no other similar or related comments appear in the record. The defendant did testify, denying that he kidnapped the woman or that he assaulted her. The defendant presented alibi witnesses and although the evidence of guilt was not overwhelming, a substantial case was made against him particularly if the alibi testimony is not believed. No curative instructions were requested or given. Because the comment was isolated and indirect, we do not believe that it coerced the defendant into testifying or that it was otherwise prejudicial to him. Point one is denied.

Defendant in his second point states that the trial court erred in denying his motion to exclude testimony of an expert witness regarding tests he did of body fluids and pieces of clothing delivered to him by the Joplin Police Department as part of a "rape kit". The witness was Melvin W. Mosher, an associate professor of chemistry and assistant director of the Regional Crime Laboratory at Missouri Southern State College. He testified that he has Bachelor of Arts, Master of Science, and PhD degrees in chemistry from recognized universities.

The admissibility of expert testimony rests largely within the discretion of the trial court whose determination will not be disturbed on appeal unless an abuse is shown. *State v. Sager*, 600 S.W.2d 541, 572 (Mo.App.1980). Generally, results of scientific techniques are admissible if they are sufficiently established to have gained general acceptance in the particular field in which the technique belongs. *Id.*, 600 S.W.2d at 562. See also *State v. Onken*, 660 S.W.2d 312, 315 (Mo.App.1983). Defendant does not contend that the tests did not have such acceptance. His contention is that the state did not reach the burden of proof which it carries to prove the accuracy and reliability of the tests. That burden, of course, is on the state. *State v. Young*, 525 S.W.2d 440, 441 (Mo.App.1975).

Dr. Mosher testified that from testing seminal stains on the victim's underpants he determined that the semen came from a person who had blood type A. He testified "with a reasonable degree of chemical certainty" that the blood was type A. He said that 42% of the population has type A blood. Defendant has type A blood.

Defendant claims that the state failed to meet its burden to show the accuracy and reliability of the tests because Dr. Mosher did not "conduct tests on the unstained portions of the alleged victim's underpants, which would have served as a control to eliminate the possibility of a false positive reaction due to bacterial contamination." Defendant contends that bacteria on the underpants might have caused a false indication of semen from someone with A type blood.

Mosher stated that there were certain bacteria which might incorrectly indicate type A blood. He admitted that at least one and perhaps other persons considered as experts believe that testing other portions of the material should be done. He

did not think it necessary at the time of the test but said that by not testing for "bacterial contamination", it made his "opinion go from maybe a 95 to a 90 percent certainty." He said there was no reason to believe that there was bacterial contamination on the pants as there were "no sites where you could definitely see bacteria growing" and no "vile odor from the material, which again is very indicative of bacteria being there."

 Through Dr. Mosher's testimony the results of the tests were shown to be sufficiently reliable to have been admitted. The questions raised by defendant regarding the tests' reliability did not prevent the admissibility of the results of the tests but went to the weight of that evidence, which was for the jury to determine. See *State v. Edwards*, 641 S.W.2d 826, 828 (Mo.App. 1982). The trial court did not abuse its discretion in allowing the test results in evidence. Point two is denied.

Defendant states in his third point that the trial court erred in giving MAI–CR2d 2.20 because it erroneously defines proof beyond a reasonable doubt as proof that leaves the jurors "firmly convinced". *State v. Pendergrass*, 726 S.W.2d 831, 833–834 (Mo.App.1987), found that such an instruction was not prejudicial. We reach the same conclusion here.

The judgment is affirmed.

HOGAN, FLANIGAN and MAUS, JJ., concur.