**STATE of Missouri, Respondent,**

v.

**James MCFARLAND, Appellant.**

**No. WD 69754.**

Missouri Court of Appeals,
Western District.

July 28, 2009.

Melinda K. Pendergraph, for Appellant.

Shaun J. Mackelprang, for Respondent.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

VICTOR C. HOWARD, Presiding Judge.

James McFarland appeals the judgment of the trial court in which he was found guilty of second degree murder and armed criminal action. In his sole point on appeal, Mr. McFarland claims that the trial court erred in denying his motions to preclude the death penalty and to substitute a second degree murder charge for an indictment charging him with first degree murder. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

On March 3, 2003, Adair County prosecutor Mark Williams charged James McFarland with second degree murder and armed criminal action. Mr. Williams later dismissed the charges with a nolle prosequi and re-filed the case with a first degree murder charge. After the State filed notice that it was seeking the death penalty, Mr. McFarland agreed to waive his right to a jury trial in exchange for the State's agreement not to seek the death penalty. The trial court found Mr. McFarland not guilty of murder in the first degree, but found him guilty of second degree murder and armed criminal action. The court sentenced Mr. McFarland to life on the second degree murder charge, and to ten years for the armed criminal action charge, to be served consecutively to the life sentence.

The evidence at trial showed that Mr. McFarland was staying at the home of the victim, Tim Mendenhall, at the time of the murder. When police officers arrived at Mr. Mendenhall's home, they found Mr. McFarland, who was severely intoxicated and had passed out in the front yard. Mr. Mendenhall's body was found in the garage. His death was caused by injuries to his head, which were consistent with being hit with a baseball bat.

The day after Mr. Williams charged Mr. McFarland with second degree murder and armed criminal action, attorney Kristen Coffman entered her appearance on behalf of Mr. McFarland. Ms. Coffman was employed by the Missouri public defender's office and had represented Mr. McFarland in several prior matters. Ms. Coffman continued to represent Mr. McFarland in this case until her employment at the public defender's office ceased in July 2005.

In June 2005, Ms. Coffman sent an e-mail to Mr. Williams seeking employment

with the prosecutor's office. Ms. Coffman and Mr. Williams met in July 2005, and Mr. Williams offered her a job with the prosecutor's office. Ms. Coffman gave notice to Richard Scheibe, her supervisor at the public defender's office, and her last day was July 21, 2005. Her first day of employment at the prosecutor's office was August 1, 2005. Mr. Scheibe informed Mr. McFarland that Ms. Coffman had left the office and that Mr. Scheibe would now represent him.

When Mr. McFarland learned that Ms. Coffman had joined the prosecutor's office, he expressed concern to Mr. Scheibe. Mr. Scheibe told Mr. McFarland that it would be better not to assert the conflict because Mr. Scheibe preferred to try the case against the local prosecutor, who had less experience with murder cases than the prosecutors at the Attorney General's office. However, Mr. Scheibe spoke to Mr. Williams and requested that he take steps to separate Ms. Coffman from Mr. McFarland's file. Mr. Williams kept the file isolated in his office, did all the filing for the case, and told Mr. Scheibe that Ms. Coffman did not talk to him about the case or participate in the prosecution in any manner.

Prior to trial, which was scheduled for November 2005, Mr. Williams dismissed the charge of second degree murder and increased the charge to first degree murder. In May 2006, the State filed notice that it was seeking the death penalty. Although these events occurred after Ms. Coffman began working at the prosecutor's office, Mr. Williams testified that he thought the facts of the case warranted the death penalty and that his decisions were not based on any information from Ms. Coffman.

After the State filed notice that it was seeking the death penalty, the local public defender withdrew and Thomas Jacquinot, an attorney from the Capital Litigation Unit, entered an appearance on Mr. McFarland's behalf. Mr. Jacquinot learned that Ms. Coffman was working at the prosecutor's office and informed the State that Mr. McFarland would not waive the conflict. On February 5, 2007, Mr. Williams withdrew, and Kevin Zoellner, a special prosecutor from the Attorney General's office, prosecuted the case.[1] Mr. Jacquinot filed motions to preclude the death penalty and to reduce the charge to second degree murder due to the conflict of interest. The trial court denied both motions, proceeded to trial, and found Mr. McFarland guilty of second degree murder and armed criminal action. This appeal by Mr. McFarland followed.

## Analysis

In Mr. McFarland's sole point on appeal, he contends that the trial court erred in denying his motions to preclude the death penalty and to substitute the information charging second degree murder for the indictment charging first degree murder. He claims that his motions should have been granted because Ms. Coffman's employment by the Adair County prosecutor created a conflict of interest, which denied Mr. McFarland of his rights to due process and a fair trial.

Mr. McFarland asks this court to review the trial court's ruling on a conflict of interest issue for an abuse of discretion, citing *State v. Walters*, 241 S.W.3d 435, 437 (Mo.App. W.D.2007) (stating that "[g]enerally, the court's decision on a motion to disqualify is reviewed based on the abuse of discretion standard"). Additionally, in addressing a trial court's rulings on ap-

---

1. Mr. Zoellner entered the case as an assistant prosecutor in December 2004 and had acted as Mr. Williams's co-counsel until February 5, 2007, when Mr. Williams withdrew.

peal, "this court reviews for prejudice, not mere error, and will reverse only if [an] error was so prejudicial that it deprived defendant of a fair trial." *State v. Samuels,* 965 S.W.2d 913, 920 (Mo.App. W.D. 1998). Mr. McFarland argues that he need not show actual prejudice and, further, that prejudice is presumed in this instance. He claims that no further showing of prejudice is required beyond an "appearance of impropriety" created by Mr. Williams's continued prosecution of the case while Ms. Coffman was employed by the prosecutor's office.

In support of these propositions, Mr. McFarland cites to several cases involving motions to disqualify due to a conflict of interest. *See State v. Burns,* 322 S.W.2d 736 (Mo.1959); *State v. Boyd,* 560 S.W.2d 296 (Mo.App.1977); *State v. Croka,* 646 S.W.2d 389 (Mo.App. W.D.1983); *State v. Reinschmidt,* 984 S.W.2d 189 (Mo.App. S.D.1998). However, we find each of these cases to be distinguishable from Mr. McFarland's case.

In *Burns,* the court stated that it would not measure the actual prejudice or require a more specific showing of prejudice where the defendant's attorney was elected as a prosecuting attorney and continued to actively participate in defendant's case. 322 S.W.2d at 742. There has been no showing in this case that Ms. Coffman continued to participate in Mr. McFarland's case after she began working for the prosecutor's office. *Boyd* and *Reinschmidt* are distinguishable from Mr. McFarland's case because in those cases, the trial courts had erroneously overruled motions to disqualify. *Boyd,* 560 S.W.2d at 298; *Reinschmidt,* 984 S.W.2d at 192. In each case, the attorney or office that should have been disqualified was allowed to proceed and take the case to trial. In this case, Mr. Williams filed a motion to withdraw due to a conflict of interest immediately after Mr. Jacquinot informed him

that Mr. McFarland would not waive the conflict. The trial court granted the motion and Mr. Zoellner tried the case.

Finally, Mr. McFarland cites to *Croka,* in which the defendant filed a motion to disqualify the prosecutor's office after his attorney was appointed as an assistant prosecuting attorney. 646 S.W.2d at 392. Although the trial court overruled the motion, the prosecutor's office withdrew from the case and a special prosecutor handled the case thereafter. *Id.* Despite withdrawing from the case, the prosecutor subsequently discussed the case with a prosecution witness. *Id.* The court noted that "[h]ad nothing more occurred, the withdrawal would presumably have cured the error," but found that the prosecutor's action of discussing the case with the witness nullified the effect of his withdrawal. *Id.* at 393. Thus, *Croka* is distinguishable from Mr. McFarland's case in that there has been no showing that Mr. Williams continued to participate in the case after withdrawing.

Notwithstanding the court's suggestion in *Croka* that withdrawal, without further participation, cures any error created by the conflict of interest, Mr. McFarland argues that Mr. Williams's withdrawal did not cure the error. However, Mr. McFarland has failed to point to any cases which show that he is entitled to any remedy other than the disqualification of the attorneys having a conflict of interest. Furthermore, as the cases Mr. McFarland cites involved different circumstances than those here, Mr. McFarland has not demonstrated that prejudice should be presumed in his case.

Essentially, Mr. McFarland asks this court to reverse and remand for a new trial on the original charge of second degree murder because Mr. Williams's decision to increase the charge to first degree murder and seek the death penalty did not

occur until after Ms. Coffman began working at the prosecutor's office, i.e., after the conflict of interest arose. After a bench trial, the court found Mr. McFarland not guilty of first degree murder but found him guilty of second degree murder. On appeal, Mr. McFarland does not challenge any evidentiary rulings or the sufficiency of the evidence to support his conviction. As the State argues in its brief, Mr. McFarland has not shown that a new trial would achieve anything other than allowing him to relitigate the same evidence that he does not now claim was improperly admitted or insufficient to support his convictions.[2] In light of Mr. McFarland's failure to show that he is entitled to a remedy beyond disqualification and that he was prejudiced by the trial court's failure to grant his motions, we find that the trial court did not commit error by denying Mr. McFarland's motions.

The judgment of the trial court is affirmed.

All concur.

---

**2.** Additionally, Mr. McFarland's argument that the court should order the State to amend the charge to second degree murder ignores the principal that "[t]he entire criminal justice system rests on apparent prosecutorial discretion in choosing whether to file charges, what charges to file, and whether to accept a plea bargain." *State v. Whitfield,* 837 S.W.2d 503, 515 (Mo. banc 1992). After Mr. Williams's withdrawal, Mr. Zoellner had discretion to re-evaluate the charges. Mr. McFarland has not referenced any cases which would vest the trial court or this court with the power to abridge that prosecutorial discretion in these circumstances.