**STORM DRILLING COMPANY**

v.

**ATLANTIC RICHFIELD CORPORA-TION and Continental Insurance Company.**

Civ. A. No. 73–3039.

United States District Court,
E. D. Louisiana.

Oct. 10, 1974.

---

Richmond Eustis, New Orleans, La., for plaintiff.

John J. Cooper, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

OPINION ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

In 1972 William E. Barnett, a mud logger employed by Formation Specialities, Inc. (Formation), filed suit in this court against a vessel, the STORM-DRILL III, *in rem;* and *in personam* against Storm Drilling Company

(Storm), Atlantic Richfield Company (Arco), Formation and their respective insurers. He alleged that he suffered an injury in 1970 while employed by Formation aboard the STORMDRILL III, and that the injury resulted from the unseaworthiness of the vessel and the negligence of the other named defendants. He sought recovery from Formation because of negligence, basing his claim on the Jones Act; he alleged claims of general maritime negligence against those defendants who were not his employer.

Arco had contracted with Formation to perform mud logging services on an offshore drilling rig. It had contracted with Storm to drill a well there. Its contract with Storm contained an indemnity agreement covering in general claims arising out of Arco's negligence. Arco's insurer, Continental, considered that the indemnity agreement obliged Arco to protect Storm from claims for negligence, and to defend (but not to indemnify for) claims for unseaworthiness. Therefore, counsel employed by Continental offered to defend the suit for both Arco and Storm (and its insurer). Arco offered to indemnify Storm "for judgment on the sole or concurrent negligence of Storm, provided no unseaworthiness is found on the part of any Storm vessel." But, "in the event a judgment is rendered based upon both negligence on the part of Storm and unseaworthiness on the part of one of Storm's vessels," or solely upon seaworthiness, Arco "will not indemnify Storm." Storm considered that the lawyer employed to defend Storm and Arco jointly would have a conflict of interest; it therefore engaged separate counsel.

The trial to a jury resulted in a judgment against the plaintiff and in favor of all defendants. In response to interrogatories, the jury found that the plaintiff was not a seaman, that he was not performing seaman's work when injured, that the STORMDRILL III was not unseaworthy and that none of the defendants were negligent. After losing

various post-trial motions, the plaintiff elected not to take an appeal.

Storm then renewed its demand on Arco for indemnity for its expenses and attorney's fees incurred in defense of Barnett's suit. Arco denied the claim. The facts are not disputed and each party has moved for summary judgment.

In essence, Arco concedes that, since the suit was by the employee of one of its subcontractors, it had a duty under its contract with Storm to defend the suit. Storm agrees that Arco did not owe indemnity for a judgment if the judgment were based on the vessel's unseaworthiness. Thus both parties recognized that Arco's duty to defend was broader than its duty to indemnify for the payment of the principal amount of a judgment against its indemnitee. See Despaux v. California Company, E.D. La.1968, 286 F.Supp. 558. But Arco contends it owes nothing to Storm for the cost of defense because it "never refused to defend but rather voiced an agreement to continue to defend Storm." Hence, Arco's position is bottomed on the thesis that one lawyer could properly represent both Arco's and Storm's interests in Barnett's action.

Both Storm and Arco had a like interest in defeating Barnett's claim entirely; but their interests were different and conflicting if Barnett recovered because the effect of the judgment would be different depending on the basis found by the jury for its verdict. If the jury's verdict found Arco's negligence to be the cause of injury in whole or in part, Arco would pay the entire judgment; but if the verdict were based only on unseaworthiness of Storm's vessel, Storm would be cast. It obviously then was to the interest of Arco to attempt first to defeat Barnett completely, but if this proved fruitless, to try to establish that, if there were any liability, it arose out of unseaworthiness of the vessel.

■■ It is fundamental to the position of an advocate in an adversary system that his loyalty to his client be undivided. The lawyer's duty to his client

is fiduciary in nature. He is, literally his client's attorney at law, agent, advocate, and champion. Grievance Committee v. Rattman, 1964, 152 Conn. 59, 65, 203 A.2d 82, 84. Hence EC 5–1 of the Code of Professional Responsibility states more than a pious platitude:

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

This is elaborated in EC 5–14:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Thus,

> [i]f a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. EC 5–15, Code of Professional Responsibility.

Finally, even

> [i]n those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. EC 5–16, Code of Professional Responsibility.

■ ■ A similar question was dealt with by the Louisiana State Bar Association Committee on Professional Responsibility in its opinion 342, issued in 1974. While the opinion was issued after the date of Storm's rejection of Arco's counsel, it states ethical principles that were established long before. The Committee stated that the same attorney may not represent both the insured and the insurer where the insurer denies coverage or reserves its right to do so subsequently.[1]

The Committee stated:

> The Committee is compelled to this conclusion based upon its belief that once the insurer decides to assert a coverage defense, the same attorney may not represent both the insured and the insurer. Canon 5 and, to some extent, Canon 7, would militate against such dual representation. EC 5–1 provides that the attorney's professional judgment should be exercised "solely for the benefit of his client and free of compromising influences and loyalties," including "interests of other clients." EC 5–14 states that an attorney cannot represent two clients with "conflicting, inconsistent, diverse, or otherwise discordant" interests. And EC 5–15 indicates that counsel "should resolve all doubts against the propriety of the representation."

■ Under the indemnity agreement, Storm was in the same position as an insured vis a vis Arco, and Arco's counsel would have been subject to the impossible stress on his professional judgment aroused by the conflict of interest between Storm and Arco and in the event

---

1. The opinion also deals with the question whether the insured may waive its right to independent counsel, but that is not involved here since Storm refused to agree.

of Barnett's recovery. Storm was not obliged to rest its interests in hands subject to such a strain.

For these reasons, Storm's motion for summary judgment is granted, and Arco's motion is denied. If the parties are able to agree upon the amount of the judgment they are to notify the court. If no notice is received within 15 days, the matter is referred to the Magistrate as Special Master, to fix the amount due.