**STATE of Missouri, Respondent,**

v.

**Franklin M. ROSS a/k/a Frank R. Miller, Appellant.**

No. 74353.

Supreme Court of Missouri,
En Banc.

April 21, 1992.

James R. Wyrsch, Jacqueline A. Cook, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

Franklin M. Ross appeals his convictions for assault in the first degree and armed criminal action, which were affirmed by the Court of Appeals, Western District. This Court granted transfer to examine the effect of the conflicts of interest by some members of the prosecuting attorney's office, who were also in the private practice of law. The judgment is reversed; the case is remanded for a new trial in accordance with this opinion.

The charges arise from an incident in the early morning of August 5, 1989. Appellant, while drinking in a Liberty bar, spoke to a business acquaintance, Lisa Lee Baker, and a friend of hers, Kenneth Green. Shortly after the bar closed, at 2:45 a.m., appellant was talking to Baker in the parking lot. Returning to her car, Baker mentioned to Green, a passenger in her car—who was standing outside the car waiting for Baker to unlock the doors—that she was tired of "all these assholes in bars." As appellant started to drive off, Green, assuming that she was referring to appellant, yelled at appellant, "See you later, asshole." Appellant turned his car around, stopped, and got out of the car.

After confirming that Green had been talking to him, appellant and Green started to fight. In the course of this fight, appellant shot Green. Appellant claims self-defense.

Later that morning, appellant drove to the North Patrol Division of the Kansas City Police Department, where, after being warned of his rights, he talked to police about the incident. Also on August 5, 1989, Assistant Prosecuting Attorney Brian J. Klopfenstein filed a complaint charging appellant with assault in the first degree and armed criminal action. At that time, Klopfenstein worked part-time as an Assistant Prosecuting Attorney and was also associated with the law firm of Von Erdmannsdorff and Zimmerman.

In connection with a civil case filed by Green, appellant (as the civil defendant) contacted the firm of Von Erdmannsdorff and Zimmerman "months" after the original incident. After Max Von Erdmannsdorff became ill, Stephen Mowry took over the case for the firm, and interviewed appellant, taking a confidential statement about the very facts of the case. Mowry also took depositions as appellant's counsel, and spoke on the telephone with appellant, apparently as late as one week before the criminal trial. Appellant met with other members of the law firm, though never with Klopfenstein, and considered Mowry as the attorney handling his case.

Mowry also serves as a part-time Assistant Prosecuting Attorney for Clay County, handling the traffic docket on three Thursdays a month. There is no evidence that appellant was ever informed by anyone acting for the law firm that two of its members were also assistant prosecuting attorneys. Appellant, apparently, first learned of the possible conflict of interest during voir dire on the first day of a three-day trial, when Assistant Prosecuting Attorney John Newberry informed the venire of the names of all attorneys working for the prosecutor's office, including Mowry and Klopfenstein. Upon hearing Mowry's name, appellant informed one of his criminal attorneys that the Mowry working for the prosecutor's office might be the same Mowry who was representing appellant in the related civil case. Appellant's attorneys claim that they were unable to confirm the dual employment of Mowry and Klopfenstein until after the trial. Appellant's attorneys first raised the conflict issue in a motion for new trial, regarding which two hearings were held.

There is no evidence of any communication—between the members of the law firm and the members of the prosecuting attorney's office who worked on the criminal case—concerning anything that the law firm was told by appellant or learned on his behalf.[1] Apparently, Klopfenstein did no

---

1. Based on the record, excluding Klopfenstein and Mowry, there were approximately four oth-

work on the civil case and was not involved in the criminal case other than filing the original complaint. Apparently, Mowry had no involvement with the criminal case.

Appellant did not testify in the criminal case, though he considered testifying as late as the second day of trial. At the post-trial hearing, appellant testified that he was "very nervous" during trial about the fact that his attorney, Mowry, knew all about his case, and how confidential information he had given Mowry might be used. In deciding whether to testify, appellant claimed that the attorney-conflict had "some bearing" on his decision not to testify, as did the fact that his statement to the police was in evidence. Appellant now claims that the potential conflict of interest "chilled" him from testifying.

The Rules of Professional Conduct (adopted as Missouri Supreme Court Rule 4) impose an essential duty of loyalty to an attorney's clients. See Comment on Rule 1.7. Rules 1.7, 1.10, and 1.11 of the Rules of Professional Conduct establish when a law firm can represent clients despite conflicts of interest. The State of Missouri argues the prosecuting attorney's office did not violate the letter of these rules, and thus the entire prosecuting attorney's office was not disqualified in this case.

Rules 1.10 and 1.11 distinguish lawyers who change firms *from* lawyers who move between private practice and government agencies. From the perspective of the prosecuting attorney's office, it is conceded that at least Rule 1.11(a) applies, and requires Klopfenstein's private law firm (in order to represent appellant) to notify the prosecuting attorney's office.

A lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate govern-

ment agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule.

Klopfenstein and Mowry were employed by the prosecuting attorney at the same time that their firm, and Mowry personally, represented appellant. This simultaneous employment is not governed by Rule 1.11 alone, as demonstrated by considering both sides of the employment/representation.

From the perspective of appellant, he must consent to the private firm's simultaneous, continuing conflict of interest under Rules 1.7 and 1.10(a). The consent required by Rule 1.7 was not given in this case.

In cases dealing with the equivalents of Rules 1.7 and 1.10 in the predecessor Code of Professional Responsibility, several of the federal courts imposed strict standards of consent and disqualification. "[I]n those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires." *Storm Drilling Company v. Atlantic Richfield Corp.*, 386 F.Supp. 830, 832 (E.D.La.1974).

In *Cheng v. GAF Corp.*,[2] the Second Circuit rejected a "Chinese Wall" defense to a motion to disqualify a law firm:

---

er attorneys working at the law firm and seven other attorneys working at the prosecutor's office.

**2.** 631 F.2d 1052, 1057 (2d Cir.1980) (reversal of denial of motion to disqualify defense attorneys), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981) (denial of motion to disqualify defense attorneys was not

appealable, thus no jurisdiction), *on remand*, 566 F.Supp. 350 (S.D.N.Y.1982) (attorney's fees awarded to defendant for frivolous appeal), *reversed*, 713 F.2d 886 (2d Cir.1983), *after remand*, 747 F.2d 97 (affirmed district court's subsequent granting of motion to disqualify defense attorneys), *vacated on other grounds*, 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985) (no juris-

[H]ere there exists a continuing danger that Gassel [Cheng's former attorney now working for law firm representing GAF] may unintentionally transmit information he gained through his prior association with Cheng during his day-to-day contact with defense counsel..... If after considering all of the precautions taken by the Epstein firm [GAF's law firm] this Court still harbors doubt as to the sufficiency of these preventive measures, then we can hardly expect Cheng or members of the public to consider the attempted quarantine to be impenetrable. Although we do not question Mr. Gassel's integrity or his sincere efforts to disassociate himself from the Cheng case, we are not satisfied that under the facts of this case the screening will be effective....

While in many cases, only one of the two rules—Rule 1.7 or Rule 1.11—would apply, simultaneous employment by a private law firm and a government agency makes both rules relevant to this case. As such, the members of the law firm had a conflict of interest that created at least the appearance of impropriety.

The ultimate question is whether the behavior of the law firm disqualifies the prosecuting attorney's office from handling this case. In *State v. Burns*, 322 S.W.2d 736, 742 (Mo.1959), this Court stated that the conduct of the prosecution in a criminal case involving conflicts of interest "like Caesar's wife, 'ought to be above suspicion.'" In *State v. Boyd*, 560 S.W.2d 296, 297 (Mo.App.1977), the court of appeals stated that as a quasi-judicial officer, the prosecuting attorney must avoid even "the appearance of impropriety." In *State v. Croka*, 646 S.W.2d 389, 393 (Mo.App.1983), the court of appeals noted:

When [former defense attorney] Busker joined the prosecutor's office, that office was thereby disqualified from prosecuting the case irrespective of the assumed facts that Busker revealed no confidences and did not himself participate in the prosecution. The disqualification does not result from information acquired and used to [defendant] Croka's detriment, but because [prosecuting attorney] Peterson's office was placed in a position where continued involvement would create an appearance of impropriety.

The decision in *State v. Wacaser*, 794 S.W.2d 190 (Mo. banc 1990), is cited in opposition to this line of authority. In *Wacaser*, the special prosecutor appointed had been the judge in defendant's prior divorce proceeding and had then joined the law firm which represented defendant in that divorce proceeding. This Court noted in *Wacaser, id.* at 196, that "a prosecutor should not serve if he has access to privileged information which might be used to the defendant's detriment." In that case the trial court held a hearing to determine if there were such access, though it is unclear when the hearing was held or its specific findings.[3]

In this case, the interconnections between the prosecuting attorney's office and the law firm handling appellant's related civil case create such suspicions and appearances of impropriety and show that members of the prosecuting attorney's office had the potential access condemned in *Wacaser*. As Klopfenstein and Mowry were employed by the prosecutor throughout the period this case was pending trial, their actions and the actions of their law firm disqualify the entire prosecuting attorney's office. A similar conclusion was reached on similar facts in *State v. Detroit Motors*, 62 N.J.Super. 386, 163 A.2d 227, 231 (N.J.Super.Ct.1960).

diction to hear appeal of disqualification of defense attorneys).

**3.** Also cited is *Blair v. Armontrout*, 916 F.2d 1310, 1332–33 (8th Cir.1990). The Eighth Circuit—applying similar rules for attorneys' practicing in the federal courts—did not require the disqualification of the entire Attorney General's office. The Eighth Circuit assumed that a "Chinese Wall" could be built. *Id.* at 1333. Unlike federal law, the law in Missouri does not assume the existence of Chinese Walls. As implicitly noted in that decision, the Eighth Circuit based its decision on federal law rather than on Missouri law, which it recognized as dictating the opposite result. *Id.* at 1332–33.

As stated in *Burns,* 322 S.W.2d at 742, this Court will not require a showing of actual prejudice in a case of this type. Prejudice is presumed, subject to rebuttal only upon a showing that the defendant waived the conflict *and* that steps were taken to insulate the actual prosecution from the conflict.

■ The State would construe defense counsel's delay in notifying the court and the actual prosecutor as a waiver by the appellant. In considering attorney-client breakdowns, the acts of the appellant are the key. Here, the record shows that appellant was never notified of the conflict until the beginning of trial, and that appellant immediately notified his defense counsel (whose allegedly dilatory investigation is not appellant's fault). Appellant in no way waived the conflict of interest.

There is equally no evidence of steps taken to insulate the actual prosecutor from the conflict. The State construes certain unsworn, timely-objected-to statements by the prosecutor as evidence that insulation occurred de facto. On this record, there is not sufficient evidence to rebut the presumption of prejudice. Appellant alleges that he was "chilled" from testifying by the potential conflict. This allegation is sufficient to justify reversal, on the present record.

On remand, the Clay County Prosecuting Attorney, including any assistant, is disqualified from trying this case due to the conflict of interest. The circuit court shall appoint a special prosecutor pursuant to § 56.110 RSMo 1986. *See State v. Jones,* 306 Mo. 437, 268 S.W. 83, 85 (1924); *State v. Duncan,* 116 Mo. 288, 22 S.W. 699, 703–04 (1893), *writ of error dismissed,* 152 U.S. 377, 14 S.Ct. 570, 38 L.Ed. 485 (1894); *State v. Moxley,* 102 Mo. 374, 14 S.W. 969, 971 (1890); *State v. Steffen,* 647 S.W.2d 146, 151–54 (Mo.App.1982).

■ Part-time assistant prosecuting attorneys may be necessary in some counties. The possible recurrence of conflicts in other criminal cases compels this Court to articulate preventive steps that would rebut the inference of prejudice. In every case—upon discovery by any party or counsel of the potential conflict of interest— that person shall disclose the conflict in open court in the presence of the defendant. Absent a waiver of the conflict of interest by the defendant, a special prosecutor shall be appointed. If the defendant has waived, or then chooses to waive, the conflict, the prosecuting attorney shall still show before the start of trial that the individual attorney(s) with the potential conflict have been insulated.

■ The mechanisms for such insulation are: First, both offices shall implement a system of internal communication to inform all members of each office about potential conflicts *before* they arise, so that attorneys with potential conflicts can be screened from any participation in the case, and apportioned no fee therefrom. Second, the private law firm shall inform individuals seeking representation about the relationship of the law firm with the prosecuting attorney's office before receiving any information from the client. Third, to implement Rule 1.7 of the Rules of Professional Conduct, the law firm should maintain a signed waiver of any conflict from the client at the start of representation.

The judgment below is reversed, and the case is remanded for a new trial in accordance with this opinion.

ROBERTSON, C.J., COVINGTON, J., and BLACKMAR, Senior Judge, concur.

THOMAS, J., concurs in separate opinion filed.

RENDLEN, Senior Judge, concurs in separate opinion filed.

HOLSTEIN, J., dissents in separate opinion filed.

THOMAS, Justice, concurring.

I concur in the majority opinion.

In my view, when Mowry, an assistant prosecuting attorney in the prosecutor's office, first conferred with appellant concerning representation in the civil matter and it became clear to Mowry the civil matter was also subject to prosecution by the prosecutor's office, Rule 1.7 came into play. Mow-

ry was undertaking to represent a client (the appellant) in a matter in which his representation of that client would be directly adverse to another client (the State). In this situation, Rule 1.7 requires that each client must consent after consultation. I believe this rule requires Mowry to explain to the appellant that he holds a position of assistant prosecutor and will be rendering services to the State at the same time he is performing legal services for appellant in the civil case involving the assault that was the subject of the prosecution. Mowry could have proposed to appellant that he would establish a "Chinese Wall" by which he would be able to demonstrate that any information appellant gave Mowry would not be shared with anyone in the prosecutor's office and that Mowry would not be involved in the prosecution of the case against appellant. If, despite this information, appellant was willing to consent to representation by Mowry in this matter, then insofar as appellant was concerned, Rule 1.7 would have been complied with.

In fact, Mowry made no such disclosure; appellant did not have information concerning the potential conflict and no consent occurred. Since the violation is now history, the issue becomes how to cure the problem, if there was a problem. It appears to me there are really only three possibilities: (1) to conclude that the problem was created by appellant, and, therefore, he is not entitled to relief; (2) to conclude that there is no problem; or (3) to conclude that Mowry caused the rule to be violated and, therefore, the appropriate remedy is to remove both he and those associated with him in the prosecutor's office from the criminal case against appellant.

The dissenting opinion would opt for the second possibility and argues vigorously that there is no violation by anyone involved in the actual prosecution of defendant and that the problem belongs to Mowry and his private law firm. I disagree. As its fall-back position, the dissenting opinion points to the first possibility by arguing that the appellant either discovered, or should have discovered, the problem and objected to it and, having failed to do so, has waived his right to object. Absent the type of consultation and written consent contemplated by Rule 1.7 (and it is clear such consultation and consent was absent), the first possible remedy is also unsatisfactory. Mowry, who had full knowledge of his own dual capacity as a prosecutor and a civil attorney, could have avoided the whole problem by giving full information to appellant as soon as it became clear to Mowry that he had a conflict because the transaction giving rise to the civil matter also involved a criminal prosecution. Mowry created the problem; he and those associated with him in the prosecutor's office should provide the solution. While his associates in the prosecutor's office, such as Mr. Newberry, may not be at fault because the problem exists in the criminal case, it can only be solved by a remedial measure, which must affect one of the parties to that litigation, either the appellant or the State. This is the problem with the dissent's position in seeking a remedy soley from Mowry and his private law firm. Between the parties to the criminal action, it is appropriate that the prosecutor's office be disqualified and replaced by independent counsel having no connection to attorney Mowry.

For this reason, I concur in the opinion and the result reached by the majority.

RENDLEN, Senior Judge, concurring.

I concur with the majority's opinion but I write separately to define more clearly the issue of prejudice as espoused therein. The majority states: "Appellant alleges that he was 'chilled' from testifying by the potential conflict. This allegation is sufficient to justify reversal, on the present record." Although *State v. Burns*, 322 S.W.2d 736 (Mo.1959), does state that neither a weighing of prejudice nor a specific showing of prejudice is required in cases of conflict of interest, this should not be interpreted by future defendants to mean that merely alleging a "chill" upon one's right to testify is automatically found to be prejudice. Rather, the record must demonstrate there existed circumstances which

merit the perceived "chill". Allegations must be based upon the record for merit to be given to a defendant's claim. Then and only then can the presumption of prejudice resulting from that "chilling" atmosphere be drawn.

Further, nothing contained in the majority's opinion should be construed to interfere with the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), concerning the finding of prejudice for claims of ineffective assistance of counsel.

HOLSTEIN, Judge, dissenting.

I respectfully dissent.

The majority opinion (1) fails to identify any lawyer involved in the prosecution of defendant whose conduct violated the Rules of Professional Conduct; (2) relies on case authorities that are distinguishable; (3) fails to apply case authorities that are clearly applicable; and (4) fails to give adequate consideration to the fact that defendant failed to raise any objection at a time when the claimed error could have been corrected without a mistrial.

## I.

When the criminal complaint against defendant was filed by Klopfenstein, neither Mowry, Klopfenstein, nor any other member of the Von Erdmannsdorff & Zimmerman firm was ethically prohibited from assisting in defendant's prosecution. All subsequent prosecutorial activity disclosed in the record was performed by John Newberry, an attorney who was not associated with the Von Erdmannsdorff & Zimmerman firm.

The Rules of Professional Conduct disqualify lawyers, not law offices. To the extent information is imputed to other lawyers, the imputation is limited to those who are associated in a "law firm." Law firms are distinguished from governmental agencies in the Rules of Professional Conduct.

Rule 1.10 provides in part:

(a) While *lawyers* are associated in a firm, none of them shall knowingly represent a client when any one of them

practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

(Emphasis added.)

Rule 1.7 provides in part:

(a) A *lawyer* shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(Emphasis added.)

Rule 1.11 provides in part:

(a) Except as law may otherwise expressly permit, a *lawyer* shall not represent a private client in connection with a matter in which the *lawyer* participated *personally* and *substantially* as a public officer or employee, unless the appropriate government agency consents after consultation. No *lawyer* in a firm with which that lawyer is associated may knowingly undertake or continue representation in such matter unless:

(1) the disqualified *lawyer* is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule.

. . . .

(c) Except as law may otherwise expressly permit, a *lawyer* serving as a public officer or employee shall not:

(1) participate in any matter in which the *lawyer* participated *personally* and *substantially* while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter . . . .

(Emphasis added.)

In the case of *Blair v. Armontrout,* 916 F.2d 1310 (8th Cir.1990), a defendant

sought to disqualify the entire Missouri Attorney General's office because one member, when previously a public defender, had represented Blair during various attempts to attack his conviction. The court refused to disqualify the entire office for the reason that a screening mechanism or "Chinese wall" could be implemented. The court applied the Missouri Rules of Professional Conduct because the United States District Court for the Western District of Missouri has adopted those rules. *Id.* at 1333. Nothing in that case supports the erroneous contention of the majority that "the Eighth Circuit based its decision on federal law rather than on Missouri law, which it recognized as dictating the opposite result." The Eighth Circuit clearly based its decision on Rule 1.11(c) of the Missouri Rules of Professional Conduct which by its terms does not disqualify all lawyers in the same governmental agency or office. In the same way that *Blair* prevented disqualification of the entire Attorney General's office, in the present case, the entire prosecutor's office should not be disqualified.

Applying the Rules of Professional Conduct here, no one could argue that when Klopfenstein signed the criminal complaint, defendant was his client, or that he violated the Rules of Professional Conduct by failing to be able to foresee that defendant at some time in the future would employ the Von Erdmannsdorff & Zimmerman firm. Similarly, no one argues that defendant was a client of John Newberry, or that Newberry is a member of the Von Erdmannsdorff & Zimmerman firm, so that representation and knowledge of any of that firm's members is imputed to Newberry. To so hold, flies squarely in the face of our rule that disqualifies only those government lawyers who "participated personally and substantially" in representing the defendant. *Rule 1.11(c)*. The majority fails to identify the rule that imputes Mowry's misconduct, assuming it was misconduct, to Newberry or, retroactively, to Klopfenstein.

No court in this state has ever held that a governmental agency is a "law firm" within the meaning of Rule 1.10. The com-

ment under Rule 1.10 defines the word "firm" as including "lawyers in a private firm, and lawyers employed in the legal department of a corporation or other organization, or in a legal services organization." The comment goes on to state:

> Different provisions are thus made for movement of a lawyer from one private firm to another and for movement of a lawyer between a private firm and the government.... The government deals with all private citizens and organizations, and thus has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if Rule 1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in Rule 1.11.

To impute any confidential communication of defendant to Newberry or Klopfenstein requires the Court to look beyond the plain language of Rules 1.7, 1.10 and 1.11. The Court must apply artificial rules of construction and rely on abstract and subjective notions of "appearances of impropriety." If this Court wishes to amend the Rules of Professional Conduct to disqualify an entire government agency where a potential conflict exists and treat such agency like a private law "firm," we should do so directly by writing a rule in language so plain that no doubt will exist in the minds of reasonable persons as to our intent.

### II.

The majority, though it has strained mightily to do so, fails to cite a single Missouri authority that precisely supports its holding. The primary cases upon which the majority relies, *State v. Burns*, 322 S.W.2d 736 (Mo.1959), and *State v. Croka*, 646 S.W.2d 389 (Mo.App.1983), are distinguishable from the case at hand.

In *Burns*, attorney Colson was employed to defend Burns on a charge at issue. Colson then took office as prosecuting attorney, turning the case over to an assistant. However, Colson appeared in court on at

least one occasion to oppose a defense motion for continuance. Colson also prepared the instructions used by the state at defendant's trial. Unquestionably Colson knew of his prior representation of defendant when he assisted in defendant's prosecution. Burns did not object until he filed a motion for new trial. This Court noted that Colson's actions were "more than a question of technical error." 322 S.W.2d at 741. The fact that Colson "acquired that information as counsel for defendant and that he might use it, render[ed] his subsequent position wholly untenable." *Id.* Thus, Colson's actions were a direct violation of clearly articulated professional norms.

A significant distinction between this case and *Burns* is that *Burns* was decided under the "Canons of Ethics." Those rules were displaced in 1970 by the "Code of Professional Responsibility." That code has since been replaced in 1986 by adoption of the current "Rules of Professional Responsibility." Unlike the present rules, the Canons of Ethics made no distinction between lawyers moving between law firms and lawyers moving between a law firm and the government. The majority fails to take note of this significant distinction found in the present rules.

Here the violation of the rules is shadowy and uncertain. In contrast to *Burns,* no one who actually communicated with defendant was shown to have participated in his criminal prosecution. Newberry, unlike Colson, was not shown to be aware of the potential conflict. In the words of our rules, no *lawyer* who had *personally* and *substantially* been involved in representing defendant was involved in the prosecution, and no *lawyer associated in the law firm* representing defendant participated in defendant's prosecution. Because *Burns* involved more than a "technical" violation of the rules, the Court presumed prejudice. The *Burns* court did not say an "appearance of impropriety" without direct evidence of a violation of a disciplinary rule would always justify reversal where the issue was not timely raised. For an example of a case involving a mere technical violation, see *State v. Howard,* 118 Mo.

127, 24 S.W. 41, 43 (1893), where this Court found no grounds for reversal where an attorney was nominally appointed to defend a client, obtained no confidential information, and later assisted in prosecution.

*State v. Croka* is also distinguishable from this case in some respects. In other respects, the majority fails to follow *Croka.* In that case, attorney Busker was appointed in May of 1979 to represent defendant in the case at issue. A preliminary hearing was held and defendant was bound over for trial. In August of that year Busker moved to withdraw because he had been appointed assistant prosecuting attorney in the same county. The defendant moved to disqualify the entire prosecutor's office. Although the motion was overruled, prosecuting attorney Peterson voluntarily withdrew and a special prosecutor was appointed. However, after withdrawing, Peterson spoke with a prosecution witness prior to a deposition on October 9, 1979, telling her "what to expect" at the deposition. The court of appeals did not identify any particular rule that had been violated but noted that when Busker joined the prosecutor's office, further prosecution by the office would create "an appearance of impropriety." According to the court of appeals, Peterson's withdrawal could have cured any error, but his further representation nullified the effect of the withdrawal. Nevertheless, the court questioned whether there had been any "actual prejudice" to defendant. It held that on remand the trial court should, if requested by defendant, inquire into the substance of the conversation between Peterson and the witness on the record. "If as a result of such hearing, it is determined that defendant has suffered actual prejudice, the trial court is instructed to take appropriate measures." 646 S.W.2d at 393.

Unlike *Croka* and *Burns,* the prosecutor assigned to prosecute defendant in this case was not shown to be on notice of any potential conflict of interest at trial or before. Also, *Croka* is distinguishable because a timely objection was made to the court and prosecutor of the possible conflict of interest.

*Croka* suggests that where there is only a technical violation, such as an "appearance of impropriety," then there must be a showing of actual prejudice as a result of the alleged misconduct. One may conjure up any number of scenarios that might give rise to "appearances of impropriety" in the eyes of the cynic. But the time honored policy of the courts has been not to reverse cases in the absence of prejudice. The time, energy, and expense of reversing and retrying cases where no prejudice exists is unjustified. The traditional rule is sound policy and, I believe, good law. In this regard, *Croka* points the way that we should follow.

### III.

As previously noted, the Missouri Rules of Professional Conduct do not disqualify an entire prosecutor's office merely because one member of the office previously represented a defendant in a related matter. No case of this Court has adopted a per se rule disqualifying an entire prosecutor's staff because of the prior representation of a defendant by one member of the prosecutor's office. The cases from other jurisdictions are not in agreement on the question. Some states have held that the entire office is disqualified, even though the lawyer involved did not obtain or divulge any confidences. *See, e.g., State v. Latigue,* 108 Ariz. 521, 502 P.2d 1340 (banc 1972); *People v. Stevens,* 642 P.2d 39 (Colo. App.1981); *State v. Chambers,* 86 N.M. 383, 524 P.2d 999 (App.1974), *cert. denied* 86 N.M. 372, 524 P.2d 988 (1974); *People v. Shinkle,* 51 N.Y.2d 417, 415 N.E.2d 909, 434 N.Y.S.2d 918 (1980). The holding in the cases just cited has been criticized for (1) failing to consider the distinction between "lawyers engaged in private practice and prosecutors engaged in constitutionally and statutorily mandated duties on behalf of the public," and (2) basing the disqualification on an "appearance of impropriety" without analyzing the facts before the court. *State v. Camacho,* 329 N.C. 589, 406 S.E.2d 868, 873 (1991). In addition, none of the cases noted above were decided under rules consistent with ours which distinguish between lawyers moving between

law firms and lawyers moving between a law firm and a government agency.

Under the opposing and, I believe, better reasoned view, the per se rule is rejected, and the Court must determine whether the individual lawyer obtained and used any confidential information against the defendant. The individual lawyer, not the entire office, is disqualified. This result is, of course, consistent with the plain language of our present rules. Decisions rejecting the per se rule of disqualification for prosecutors' offices include *Hannon v. State,* 48 Ala.App. 613, 266 So.2d 825 (1972); *Upton v. State,* 257 Ark. 424, 516 S.W.2d 904 (1974); *State v. Jones,* 180 Conn. 443, 429 A.2d 936 (1980); *Thompson v. State,* 246 So.2d 760 (Fla.1971); *Summit v. Mudd,* 679 S.W.2d 225 (Ky.1984); *State v. Bell,* 346 So.2d 1090 (La.1977); *Young v. State,* 297 Md. 286, 465 A.2d 1149 (1983); *Collier v. Legakes,* 98 Nev. 307, 646 P.2d 1219 (1982); *State v. Camacho,* 329 N.C. 589, 406 S.E.2d 868, 873 (1991); and *Commonwealth v. Miller,* 281 Pa.Super. 392, 422 A.2d 525 (1980). Even when special prosecutors are appointed or procedures are adopted to insulate disqualified lawyers, it is necessary to trust to the integrity of the lawyers in question.

> [T]ransferring responsibility from one office to another, or the appointment of a special prosecutor ... is more cosmetic than substantial. Essentially the question is whether defendant has been in any way prejudiced by virtue of the imparting of knowledge from his former counsel to anyone involved in his prosecution.

*State v. Cline,* 122 R.I. 297, 325, 405 A.2d 1192, 1207 (1979).

Compare also the three-step inquiry utilized in *United States v. Goot,* 894 F.2d 231, 235 (7th Cir.1990):

> First, does a "substantial relationship" exist between the subject matter of the prior and present representations? Second, if so, has the presumption of shared confidences with respect to the prior representation been rebutted? Third, if not, has the presumption of shared confidenc-

es with respect to the present representation been rebutted?

In *Goot* the convictions were affirmed where defendant's attorney later became the United States attorney but recused himself from the case, appointed an assistant in his office, and provided affidavits that he had not communicated with the attorneys in the case. 894 F.2d at 233. The end result was that the entire United States Attorney's Office for the Northern District of Indiana was not required to be disqualified because defendant's former attorney was sufficiently screened from the prosecution. *Id.* at 237. The better rule, then, is to make a case-by-case analysis to determine if there has been any violation of a defendant's confidences or other prejudice to him in the case.

### IV.

At minimum, I would not adopt the draconian per se rule requiring disqualification of the entire prosecutor's office in a case where the potential conflict was fully disclosed to defendant prior to trial but the defendant waited until weeks after an unfavorable verdict to make his objection by way of an after trial motion. One fact that is certain from this record is that defendant recognized Mowry's name during *voir dire* and that neither defendant nor his attorney objected at trial. The trial court rejected defendant's claim that he was "chilled" from testifying, and so should we. Defendant and his attorney had all the facts at hand to let their concerns be known and inexplicably failed to act. In short, I would not apply the per se rule based on mere technical grounds of "an appearance of impropriety" without a showing of either (1) actual prejudice or (2) a timely objection.

The result I suggest would also be consistent with *State v. Wacaser*, 794 S.W.2d 190, 195–96 (Mo. banc 1990). There, this Court upheld a trial court finding after a hearing that the prosecutor was not disqualified in that he had not possessed confidential information, though his private law firm represented defendant in a related matter.

For all the reasons set forth above, I respectfully dissent.