**STATE of Missouri, Plaintiff–Respondent,**

v.

**Loretta WILSON, Defendant–Appellant.**

**No. 27014.**

Missouri Court of Appeals, Southern District, Division Two.

June 28, 2006.

Thomas D. Carver, Dee Wampler, Joseph S. Passanise, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Office of the Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Presiding Judge.

A trial judge convicted Loretta Wilson ("Defendant") on three counts of possession of controlled substances (§ 195.202).[1] At her sentencing hearing, Defendant argued for a new trial because of an alleged conflict of interest involving the prosecutor, Christopher Nielson ("Nielson"). This claim was first raised as part of her motion for new trial. The basis for this claim was the fact that earlier in his professional career, Nielson had worked as a public defender and, while doing so, had represented Defendant concerning unrelated criminal charges lodged against her.

The trial court denied Defendant's request for a new trial. This appeal followed. We affirm.

"In 1986, the Missouri Supreme Court adopted the ABA Model Rules of Professional Conduct as its own rules to govern the ethics and professional responsibility of Missouri attorneys." *State ex rel. Horn v. Ray*, 138 S.W.3d 729, 731 (Mo.App. 2002). When, as here, a public defender has previously represented a defendant and later prosecutes that same defendant on another charge, the applicable standard to judge such conduct appears in Rule 4–1.9 (the former client rule).[2] *See Deck v. State*, 68 S.W.3d 418, 431 (Mo.banc 2002) (former defense attorney worked for prosecutor's office, but did not participate in case); *State v. Smith*, 32 S.W.3d 532, 541–43 (Mo.banc 2000) (former defense attorney was actual prosecutor on case).[3]

There are two guidelines in the model rule that govern the former client situation. Under subsection (a) of Rule 4–1.9, a lawyer who previously represented a client shall not represent another person "in the same or a substantially related matter" where the second person's interests are materially adverse to those of the former client unless the former client consents after consultation. Rule 4–1.9(b) provides that a lawyer shall not "use information relating to the representation to the disadvantage of the former client" unless the information has become generally known or for other exceptions not applicable here.

---

**1.** All statutory references are to RSMo (2000), unless stated otherwise.

**2.** All rule references are to Supreme Court Rules (2006), unless indicated differently.

**3.** Both Defendant and the State agree that Rule 4–1.9 governs this case.

Similarly, section 56.110 provides that if a prosecutor "be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office," he or she may be disqualified by the trial court. Generally, when motions to disqualify a prosecutor are presented to the court pursuant to either the model rule or the statute, the court's decision is measured against an abuse of discretion standard. *Smith*, 32 S.W.3d at 543; *State v. Puckett*, 691 S.W.2d 491, 494[7] (Mo.App.1985). We are not convinced, however, that the trial court's ruling here should be measured by the abuse of discretion standard.

■ To explain, Defendant was represented at trial by attorney Robert Childress.[4] Although Defendant told Childress before trial that Nielson had once served as her criminal defense attorney, neither Childress nor Defendant informed the trial judge of that fact before or during trial. They never complained before or during trial of any alleged conflict of interest nor did they attempt before or during trial to disqualify Nielson.

The trial court was first apprised of Nielson's prior representation of Defendant at the sentencing hearing when Defendant's newly hired counsel, Dee Wampler, argued Defendant's motion for new trial. The trial judge promptly concluded "there was sandbagging going on." The judge then correctly summarized what the record shows: "You knew about a potential conflict, and you keep it under your hat, and you want to see what the result is, and then when you get an adverse result, well, then you make these claims." Having made that observation, the court denied Defendant's motion.

■ On this record, it was reasonable for the trial judge to infer that he had been sandbagged by the defense. *See* n. 5. Assuming *arguendo* that Nielson's prior representation of Defendant would have run afoul of Rule 4–1.9 or section 56.110— which is a wholly unproven hypothesis— we would still not reverse Defendant's convictions. This is so because no criminal trial or judgment should be affected, in any manner, by an error committed at the instance of the defendant. *State v. Campbell*, 122 S.W.3d 736, 742[10] (Mo.App. 2004). Since Defendant and her trial lawyer knew of the alleged conflict of interest claim before and during the trial, yet chose to remain silent, they cannot use that alleged conflict as a basis for obtaining a new trial. Defendant simply cannot remain silent, roll the dice via a trial, and then complain about an alleged error that was essentially committed at her instance.[5]

---

4. We need not recount the underlying facts leading to Defendant's convictions for possession of controlled substances as they are unnecessary to our decision on appeal. Suffice it to say, the evidence was sufficient to support the convictions.

5. This is not the situation that existed in *State v. Ross*, 829 S.W.2d 948 (Mo.banc 1992). There, defendant Ross was charged with shooting Kenneth Green. Also, Ross was sued by Green in civil court for damages. Ross hired a law firm to defend him. Attorney Mowry was ultimately assigned to handle Ross's civil case and, in connection therewith, took a confidential statement about "the very facts of the case." *Id.* at 949. Mowry was also an assistant to the prosecutor, a fact that he did not disclose to Ross. During voir dire in the criminal case, Ross learned of Mowry's relationship with the prosecutor's office. Although Ross immediately told his criminal defense lawyer about this, counsel did not diligently investigate Ross's "conflict" complaint. On those facts, the *Ross* court found (1) there was a conflict that disqualified the entire prosecuting attorney's office, *Id.* at 951, and (2) there was no waiver because the "dilatory investigation" of Ross's complaint was not his fault. *Id.* at 952. Those are not the facts here. First, there is no evidence here that a conflict existed; consequently, there is

Additionally, the trial judge's rejection of Defendant's conflict of interest argument is supported by the general rule that constitutional violations are waived if not raised at the first opportunity. *State v. Mann*, 35 S.W.3d 913, 916[7] (Mo.App. 2001). Defendant's motion alleged that the so-called conflict rendered "the conviction herein constitutionally infirm." However, her silence about this issue until after the trial acted as a waiver of any constitutionally-based argument. *Id.* As such, any review of Defendant's claim could only be a discretionary review per the plain error standard.

With this said, we nevertheless have gratuitously examined this record and find no basis for reversal, either under the plain error rule or under the abuse of discretion standard. To begin with, Rule 4–1.9 mandates disqualification of the prosecutor only when (1) the former case was substantially related to the present, or (2) when confidential information from the former case is used to the detriment of the former client. Here, Defendant's unverified motion for new trial contained only conclusory allegations to the effect that prosecutor Nielson had once represented Defendant in a criminal case. However, there are no fact-based allegations in Defendant's new trial motion which, if proven, would have shown the former case was substantially related to the present or what confidential information was used by the prosecutor's office to Defendant's detriment. More than that, Defendant offered no evidence, documentary or testimonial, to support anything other than the fact that Nielson once represented Defendant in a criminal case, a fact that the

State readily conceded. Pleadings such as new trial motions do not prove themselves. *State v. O'Neill*, 825 S.W.2d 376, 377[1] (Mo.App.1992).

In her brief, Defendant reveals the speculative and unsupported nature of her argument when she writes:

> "Aside from the fact that [Defendant] must have shared confidences with Nielson when he defended her that could or were used against her in this trial, the relationship is also connected by her prosecution and sentencing as a prior and persistent drug offender; prior convictions of which Mr. Nielson surely had intimate knowledge."

Defendant provides us with nothing but speculation about what "intimate knowledge" was allegedly used against her by Nielson. Reduced to its essence, Defendant's claim that there was a fatal conflict is based solely on the fact that Nielson once represented Defendant in a criminal case. However, as explained above, Missouri now operates under ABA Model Rules of Professional Conduct, and under Rule 4–1.9, any such argument lacks merit. Any doubt about that is dispelled by *Smith*, 32 S.W.3d 532.

There, the prosecutor in a first-degree murder trial had represented the defendant in two earlier criminal cases. One such case occurred sixteen years before the current case and involved a work permit revocation; the other case involved a felony stealing charge lodged against the accused fourteen years earlier. In rejecting the accused's claim that the trial court erred when it overruled his motion to disqualify the prosecutor, the Smith court noted (a) there was no evidence that any

---

nothing to support the notion that Nielson had any duty to disclose his prior representation of Defendant to the trial court. Second, Defendant told her lawyer before trial that "Nielson had previously represented her in

some unrelated matter;" consequently, it is reasonable to infer that Defendant's defense counsel either correctly recognized there was no conflict, or engaged in what the trial judge accused him of, i.e., sandbagging.

confidential information from the prior cases had any relevance in the current murder case; (b) the record failed to support the argument that the prosecutor's decision to seek the death penalty was due to information gained from a prior representation; and (c) the prosecutor's use of the accused's prior conviction to show the accused's status as a prior offender was not a disqualifying factor. *Id.* at 542[2]. As the court explained it, the earlier conviction was a matter of public record available to any prosecutor. *Id.*

In sum, the *Smith* court upheld the application of Rule 4–1.9, finding that "the various representations that allegedly result in a conflict of interest must be connected by something substantially more than the prosecutor himself if they are to be substantially related." *Id.* at 543. Here, when Defendant failed to show any of the underlying facts of the previous representation, it was foreordained that she could not show a conflict of interest under either prong of Rule 4–1.9.

We find that Nielson was under no conflict of interest when he prosecuted Defendant for the possession charges. Simply because he represented Defendant in a prior unrelated matter does not equate to a conflict of interest in the present case.

In so ruling, we do not ignore *State v. Boyd,* 560 S.W.2d 296 (Mo.App.1977), the principal authority cited by Defendant to support her argument. There, Mark Bryant was an assistant public defender when other members of his office represented the defendant at the time of arraignment and preliminary hearing.

Bryant later took a job as an assistant prosecuting attorney. He then prosecuted the defendant on the *same charges* that arose when he was with the public defender's office. Although it was admitted that Bryant had no knowledge or connection with the defendant's case while at the public defender's office, the western district ruled that *actual* knowledge need not be shown in such a case. *Id.* at 297–98. Essentially, the court found that the appearance of impropriety mandated that Bryant be disqualified from the case. *Id.*

The *Boyd* case does not support Defendant's argument for reversal here for two reasons. First, that case and the legal principles it relied on apply when a former defense attorney (who is now a prosecutor) had a connection to the *same case* or same set of facts. That is not our situation. Second, *Boyd* was decided when different standards were in place, i.e., before the ABA standards were adopted for use in this state. *Boyd* simply does not support Defendant's argument. Defendant's point is denied.

The judgment of convictions and sentences is affirmed.

GARRISON, J., and BATES, C.J., concur.