

# Missouri Court of Appeals

### Southern District

### en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD32883 |
| | ) | |
| ANDREW LUKE LEMASTERS, | ) | **Filed: June 16, 2014** |
| | ) | |
| Defendant- Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

### Honorable Timothy W. Perigo, Circuit Judge

## AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Andrew Luke Lemasters ("Defendant") appeals from his conviction of first-degree statutory sodomy. *See* § 566.062.[1] He raises two points on appeal: (1) the trial court erred in denying his motion to disqualify the Newton County Prosecuting Attorney's Office and (2) the trial court erred in entering a written judgment showing convictions for two counts of first-degree statutory sodomy when Defendant was in fact convicted of only one count. We disagree with the arguments raised in Defendant's first point but find merit in Defendant's second point. Consequently, for the reasons explained below, we affirm Defendant's

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2000.

conviction for first-degree statutory sodomy but reverse and remand the case for entry of an amended judgment.

## Factual and Procedural Background

Defendant's daughter, H.L. ("Victim"), was born in 1992. Pamela Lemasters ("Lemasters") married Defendant in July 1992 and raised Victim as her own child. During the spring of 2001 when the family lived in Newton County, Defendant called Victim into his bedroom one day, told her to take her clothes off, and put his finger in her vagina. Other incidents of sexual abuse continued throughout Victim's childhood, but she did not tell anyone at the time because she was afraid of Defendant and afraid she would be separated from Lemasters and other members of the family. Victim eventually disclosed Defendant's acts of sexual abuse.

Defendant was charged with two counts of first-degree statutory sodomy. Initially he was represented by Melia Cheney ("Cheney") who was employed by the Missouri State Public Defender System ("MSPD"). Cheney subsequently left the MSPD and joined the Newton County Prosecuting Attorney's Office. While the case was pending, Defendant filed a motion to disqualify the Newton County Prosecuting Attorney's Office because Cheney had previously represented Defendant in this case.

The trial court held a hearing regarding the motion to disqualify. The testimony and court documents reveal the trial court ordered the MSPD to represent Defendant on August 7, 2012. The MSPD then sent a form letter to Defendant on August 8, 2012, advising him an attorney would subsequently visit him as well as giving other information. On August 16, 2012, Cheney entered her

2

written appearance in Defendant's case. Her office received telephone calls from Defendant's family members, but Cheney asked her secretary to call them back and inform them she could not speak with them about Defendant's case.

Cheney attempted to get a bond reduction for Defendant. Cheney believed the bond reduction request involved a court appearance, but she "did not participate in a bond reduction hearing where witnesses were called to the stand." Cheney met with Defendant briefly on August 19 or 20, 2012. After this fifteen minute interview ended, Cheney asked one of her investigators to conduct a recorded interview with Defendant because Defendant had "a problem using too many pronouns" such that Cheney had difficulty "keep[ing] track of what he's talking about." Finally, Cheney completed an inter-office transfer memorandum on September 7, 2012, indicating other public defenders were working on the case for preliminary hearing. She left the MSPD on September 7, 2012, and began work at the Newton County Prosecuting Attorney's Office on September 10, 2012.

Cheney testified that once she began work at the Newton County Prosecuting Attorney's Office she did not have any participation "in the prosecution of any individuals where [she] previously represented them." Additionally, she did not discuss any of those cases with her colleagues at the Newton County Prosecuting Attorney's Office except to say she had previously represented the individuals involved. Cheney worked only with cases where the defendants were represented by private attorneys or where the defendants represented themselves.

After the hearing, the trial court denied Defendant's motion to disqualify the Newton County Prosecuting Attorney's Office.

Defendant was tried by a jury on June 4 - 5, 2013. During the instruction conference, the trial judge noted "[t]he state has elected to dismiss one of the two counts." The jury then found Defendant guilty of one count of first-degree statutory sodomy. The judge sentenced Defendant to 31 years in the Missouri Department of Corrections. Defendant appeals.

## Discussion

### *Point I: Alleged Disqualification*

In his first point, Defendant argues the trial court erred in denying his motion to disqualify the Newton County Prosecuting Attorney's Office. This argument is without merit because Cheney was appropriately screened from the prosecution once she joined the Newton County Prosecuting Attorney's Office.

"Generally, the court's decision on a motion to disqualify is reviewed based on the abuse of discretion standard." *State v. Walters*, 241 S.W.3d 435, 437 (Mo. App. W.D. 2007). "Abuse of discretion only occurs if a 'ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *State v. Hawkins*, 328 S.W.3d 799, 808 (Mo. App. S.D. 2010) (quoting *State v. Taylor*, 134 S.W.3d 21, 26 (Mo. banc 2004)). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Id.* (quoting *Taylor*, 134 S.W.3d at 26). The facts of this case show no abuse of discretion.

4

At the time of trial, Cheney was an attorney representing a government agency, the Newton County Prosecuting Attorney's Office. She had previously represented Defendant in the same criminal case as his public defender. Cheney did not participate in the prosecution of Defendant's case while she worked for the Newton County Prosecuting Attorney's Office and disclosed no information regarding his case. Consequently, this case involves imputation of a conflict involving a government attorney. The applicable rule is Rule 4-1.11(d).[2] Rule 4-1.10(d); Rule 4-1.11 cmt. 2. That rule provides as follows:

> Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee:
>
> (1)     is subject to Rules 4-1.7 and 4-1.9; and
>
> (2)     shall not:
>
> (i)     participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing[.]

Rule 4-1.11(d).

Rule 4-1.7 governs concurrent conflicts, so is not relevant to the disposition of this case. Rule 4-1.9, governing duties to former clients, provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Rule 4-1.9(a).

---

[2] Unless otherwise indicated, all rule references are to Missouri Court Rules (2013).

These rules prohibit the government attorney's participation in a matter where the attorney participated personally and substantially prior to joining the government agency, but, contrary to the practice involving private attorneys, *see* Rule 4-1.10, they do not impute the attorney's conflict to the entire agency. As the comments to the rules explain, "[b]ecause of the special problems raised by imputation within a government agency, Rule 4-1.11(d) does not impute the conflicts of a government lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers." Rule 4-1.11 cmt. 2.

In the present case, Cheney did not participate in any way in Defendant's case once she joined the Newton County Prosecuting Attorney's Office. Thus, Cheney complied with Rule 4-1.9(a) which prevented her participation in Defendant's case because she had participated in the case during her employment with the MSPD. Furthermore, Cheney did not talk to other attorneys in the Newton County Prosecuting Attorney's Office about the case or appear in court on any MSPD dockets. Thus, the Newton County Prosecuting Attorney's Office complied with Rule 4-1.11. Cheney's individual conflict was not imputed to the government office as the procedures implemented to screen Cheney were appropriate. *See* Rule 4-1.11 cmt. 2. The trial court did not abuse its discretion when it denied Defendant's motion to disqualify.

In reaching this conclusion, we have not overlooked our previous decision in **State v. Reinschmidt**, 984 S.W.2d 189 (Mo. App. S.D. 1998). Rather, we believe **Reinschmidt** was incorrectly decided.

6

In ***Reinschmidt***, one of the attorneys associated with the prosecutor's office represented the defendant for two years while she worked as an assistant public defender. ***Id.*** at 192. After the former defense attorney started working for the prosecutor's office, the defendant filed a motion to disqualify the prosecutor's office. ***Id.*** at 191. The former defense attorney submitted an affidavit assuring the trial court she was not involved in the defendant's prosecution, and the trial court overruled the motion. ***Id.*** at 190-91. The defendant was subsequently tried and convicted. ***Id.*** at 191.

On appeal, the defendant again argued the prosecutor's office should have been disqualified. ***Id.*** This Court found the situation created "such suspicions and appearances of impropriety" that disqualification of the entire prosecutor's office was required. ***Id.*** at 191-92.

That conclusion was incorrect because it did not apply Rule 4-1.11. Nowhere in the ***Reinschmidt*** opinion did the Court cite to the applicable rule. Furthermore, the phrase the Court did use—"appearance of impropriety"—echoes the former rules of professional conduct which stated lawyers should strive to avoid "the appearance of impropriety." Rule 4, EC 9-6, Missouri Court Rules (1983) (repealed 1986). However, those rules were repealed when the current rules were adopted in 1986. ***State ex rel Horn v. Ray***, 138 S.W.3d 729, 732 (Mo. App. E.D. 2002). Thus, ***Reinschmidt*** applied a rule that was no longer in force. Consequently, it was improperly decided and should no longer be followed.

Defendant's reliance on ***State v. Croka***, 646 S.W.2d 389 (Mo. banc 1983), is unpersuasive for a similar reason. ***Croka*** was decided in 1983. Thus,

7

*Croka* applied the prior set of disciplinary rules which stated lawyers should avoid an "appearance of impropriety." Rule 4, EC 9-6, Missouri Court Rules (1983) (repealed 1986). As explained above, those rules were repealed in 1986. Since *Croka* did not apply the rule that is currently in force, it has no bearing on the proper result in this case.

Finally, Defendant also cites *State v. Ross*, 829 S.W.2d 948 (Mo. banc 1992), in support of his argument for reversal. *Ross* is different from the present case because it involved a different type of conflict. In *Ross*, the prosecuting attorney's office charged the defendant with assault in connection with a fight. 829 S.W.2d at 949. The defendant subsequently consulted with a private law firm in the hope of filing a civil lawsuit arising out of the same transaction. Two of the attorneys with that private law firm were also part-time prosecuting attorneys and received confidential information regarding the civil case at the same time the criminal prosecution was taking place. *Id.* The Supreme Court of Missouri discussed prior case law and the text of Rule 4-1.7 and Rule 4-1.11 before deciding the concurrent conflict created an appearance of impropriety. *Id.* at 951.

Here, unlike in *Ross*, the conflict was not created by a concurrent representation but by Cheney's duties to a former client. A concurrent conflict of interest creates more potential dangers to the affected client. Since *Ross* involved a concurrent conflict of interest and the present case does not, *Ross* is not controlling.

Cheney was properly screened from the prosecution of Defendant's case when she joined the Newton County Prosecuting Attorney's Office. This

procedure complied with Rule 4-1.9(a) and Rule 4-1.11(d). Defendant has not alleged that Cheney's prior employment affected his trial in any way. The mere fact that an assistant prosecuting attorney who was properly screened previously represented a defendant in the same criminal matter should not automatically be imputed to require a prosecuting attorney and his entire staff to be disqualified. Consequently, the trial court did not abuse its discretion in denying Defendant's motion to disqualify the entire Newton County Prosecuting Attorney's Office. Defendant's first point is denied.

### Point II: Error in the Written Judgment

In his second point, Defendant argues the trial court erred in entering a written judgment which reflects convictions for two offenses when in fact Defendant was convicted of only one offense. The State concedes this was error, and we agree.

Clerical errors in the sentence and judgment in a criminal case may be corrected by an order *nunc pro tunc* where the written record does not reflect what was actually done. ***State v. Carroll***, 207 S.W.3d 140, 142 (Mo. App. E.D. 2006); Rule 29.12(c). "When the decision of the trial court as announced in open court was inaccurately memorialized, it is clear there was a clerical error." ***State v. Kerns***, 389 S.W.3d 244, 248 (Mo. App. S.D. 2012).

Here, it is clear the written judgment does not reflect what actually occurred during trial and sentencing. Defendant was initially charged with two identical counts of first-degree statutory sodomy. During the instruction conference, the judge stated the State had dismissed one of the charges. Only one verdict director was submitted to the jury, and the jury returned only one guilty

9

verdict. Then, the trial court specifically imposed one sentence of 31 years incarceration.

Nevertheless, the judgment states Defendant was found guilty of two counts of first-degree statutory sodomy. Under this record, the trial court's intentions are clear—Defendant was convicted of one count and was sentenced to serve one term of 31 years incarceration—and a *nunc pro tunc* order is appropriate. *See **State v. Allison***, 326 S.W.3d 81, 95 (Mo. App. W.D. 2010).

Defendant's second point is granted.

## Decision

Defendant's conviction for first-degree statutory sodomy is affirmed. The case is remanded for entry of an amended judgment reflecting only one conviction for that offense.

Sheffield, J. - Opinion Author

Francis, C.J. - CONCURS

Rahmeyer, J. - CONCURS

Bates, J. - CONCURS

Lynch, J. - CONCURS

Scott, J. - CONCURS

Burrell, J. - CONCURS

10