

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00091-CV

———————————————————

THE STONEGATE FINANCIAL CORPORATION, Appellant,

V.

BROUGHTON MAINTENANCE ASSOCIATION, INC., and OLD GROVE
MAINTENANCE ASSOCIATION, INC., Appellees

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-256351-11

---

Before Kerr and Pittman, JJ., and Gonzalez, J.[1]
Memorandum Opinion by Justice Kerr

---

[1]The Honorable Ruben Gonzalez, Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the government code. *See* Tex. Gov't Code Ann. § 74.003(h).

## MEMORANDUM OPINION

With an incomplete record and in two issues, the Stonegate Financial Corporation appeals the amount of attorney's fees awarded to it following a trial to the court, arguing first that the trial court abused its discretion by awarding less than Stonegate's evidence had established in this breach-of-contract case. In its second issue, Stonegate complains of the trial court's declining to award a contractual 18 per cent interest on top of the full amount of attorney's fees Stonegate sought at trial.

Because Stonegate did not comply with appellate-procedure rule 34.6(c)(1) by providing a "statement of the points or issues to be presented on appeal"—not in its request to the court reporter, in its notice of appeal, or otherwise—we must presume that the record's missing portions are relevant and support the trial court's judgment. We will therefore affirm.

### BACKGROUND

#### A.    The litigation

In November 2011, Stonegate, Sister Initiative, LLC, and Randy Vest[2] sued three maintenance associations (HOAs) that performed landscaping and common-

---

[2]Vest nonsuited his claims before trial and is not involved in this appeal. There were issues with the complete reporter's record late-ordered by appellant Sister Initiative. After this cause's October 23, 2018 submission and on our own motion, we severed the appeal perfected by Sister Initiative and two third-party defendants and assigned it Cause No. 02-19-00102-CV; that appeal remains pending. We have not considered any portion of the reporter's record that Sister Initiative and the other non-Stonegate appellants caused to be filed (in January 2019) in connection with their own now-severed appeal.

area-upkeep services for various residential developments and to which the plaintiffs had loaned money. Of the roughly $118,000 collectively sued for, the outstanding amount owed to Stonegate when suit was filed totaled less than $5,300: Broughton Maintenance Association, Inc. was alleged to owe $4,170.98 in principal and accrued interest, and Old Grove Maintenance Association, Inc. allegedly owed Stonegate $1,068.47 in principal and accrued interest.[3]

The plaintiffs' seemingly straightforward breach-of-promissory-note claims were met with accusations of fraud and self-dealing, along with counterclaims asserted several months later in February 2012 by all three HOAs against Stonegate and the other two plaintiffs. Until the late summer of 2014, Bracewell LLP continued to represent all three plaintiffs–counterdefendants, limiting its representation to Stonegate and its president, Dale Crane, only after the HOAs brought third-party actions against Crane, David Bagwell, Susan Bagwell, the David Bagwell Company, and Old Grove Limited Partnership in August and September 2014. Around that time, Sister Initiative and the others obtained separate counsel.

B.   Trial testimony on Stonegate's attorney's fees

A bench trial on all claims and counterclaims took place over several weeks in the early summer of 2017, almost seven years after this lawsuit started. In the only part of the reporter's record that is before us in connection with Stonegate's appeal,

---

[3]Sister Initiative, but not Stonegate, had loaned money to the third HOA defendant, Whittier Heights Maintenance Association, Inc.

Stonegate's counsel testified to attorney's fees through trial of $564,521.01 and introduced some 175 pages of Bracewell billing records. Testifying in narrative form about the requested fees through trial, counsel discussed each of the *Arthur Andersen* factors.[4]

As for the contractual interest on attorney's fees that Stonegate also seeks on appeal, counsel's testimony refers to other testimony—that of Stonegate's president, Crane—which was not included in the record:

> Mr. Crane testified that he's seeking interest on his attorneys' fees and – based off of an 18 percent provision in his contract at the point that he paid the invoices.
>
> I have a demonstrative that I would like to pull up on the screen. [Counsel then described that demonstrative, which is not in the record.]
>
> The total amount of the accrued interest on the amount actually paid is $93,092.25. He testified that he's seeking that as – as damages as well. And – And – And that – And he couldn't testify at that point in time from his memory of each date that he paid, but this demonstrative here shows those particular dates and the amount he is seeking for interest on attorneys' fees of $93,092.25.

Each HOA cross-examined Stonegate's counsel, including about a mutual-walkaway offer that the HOAs had made before a mediation that took place in

---

[4]*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (op. on reh'g) (setting out eight salient factors in determining a reasonable amount of attorney's fees). The Texas Supreme Court has recently refined how a party should prove up its reasonable and necessary attorney's fees and how an opponent should challenge them. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at *20–22 (Tex. Apr. 26, 2019). Our disposition of Stonegate's appeal obviates any need to consider *Rohrmoos*'s putative effect here.

4

September 2012, which was almost a year before the HOAs filed their third-party claims.

## C. Final judgment

In mid-December 2017, the trial court entered a final judgment. As it related to Stonegate's claims, the judgment awarded Stonegate the following monetary relief:

from Old Grove Maintenance Association—

- $2,073.72 owed "under the terms of the promissory notes";

- $11,706.15 in reasonable and necessary attorney's fees through judgment;

- $17,000 in attorney's fees at the court-of-appeals level; and

- $12,750 in attorney's fees through any appeal to the Texas Supreme Court; and

from Broughton Maintenance Association—

- $6,955.38 owed "under the terms of the promissory notes";

- $57,153.55 in reasonable and necessary attorney's fees through judgment;

- $83,000 in attorney's fees at the court-of-appeals level; and

- $62,250 in attorney's fees through any appeal to the Texas Supreme Court.

With this judgment, the trial court awarded Stonegate the entirety of its requested $175,000 in conditional attorney's fees at the appellate and highest-court levels but reduced the requested attorney's fees through trial from $564,521.01 down to $68,859.70 ($11,706.15 plus $57,153.55).

**D. Findings of fact and conclusions of law**

At Stonegate's request, the trial court later entered findings of fact and conclusions of law. Among other things, including noting the "amount in controversy with regard to the Stonegate notes" (a total, through trial, of $9,029.10, including accrued interest), the trial court found that

> the amount of $11,706.15 is a reasonable fee for the necessary services rendered by Bracewell on behalf of Stonegate in the collection of the Stonegate notes pertaining to [Old Grove]. The Court further finds that any amount of fees paid to Bracewell in excess of $11,706.15 were not reasonable or necessary in connection with the collection of the Stonegate notes pertaining to [Old Grove], and therefore any recovery of fees for collection of the [Old Grove] notes by Stonegate in excess of $11,706.15 would be unconscionable, particularly in light of the amount in controversy.

The trial court used the same language concerning the Broughton note, changing only the amount of a "reasonable fee" to $57,153.55, and wrapped up its findings of fact by stating that it had taken into account both *Arthur Anderson* and *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).

The trial court did not address the sued-for 18% interest on attorney's fees contained in the Stonegate loan documents with the two HOA borrowers.

**E. Stonegate appeals and orders the reporter's record.**

Stonegate timely filed its notice of appeal "from the Final Judgment signed on December 14, 2017" by the trial court. Two days later, Stonegate asked the court reporter to

6

prepare, certify, and file with the Court of Appeals for the Second Judicial District the Reporter's Record, including a full record of the selected proceedings in the above-captioned case, listed below:

- Transcript of the expert testimony of Kevin T. Schutte regarding attorneys' fees from the Trial, including all exhibits admitted into evidence during Kevin T. Schutte's testimony at Trial.

### SUMMARY OF ISSUES ON APPEAL

Stonegate has raised two issues: (1) that the trial court's attorney's-fee award resulted from an abuse of discretion because (a) the evidence established the half-million-dollar-plus amount as a matter of law; (b) the trial court acted arbitrarily; and (c) the award was against the great weight and preponderance of the evidence presented at trial; and (2) that the trial court abused its discretion by not awarding $93,000 in interest on the attorney's fees Stonegate had actually paid because (a) the parties had contracted for interest on attorney's fees; (b) the evidence established all facts underpinning Stonegate's claim for interest as a matter of law; and (c) the trial court's failure to award the contracted-for interest was against the great weight and preponderance of the evidence.

The HOA appellees responded by first arguing that Stonegate's failure to provide "a statement of the points or issues to be presented on appeal" under rule 34.6(c)(1) means that Stonegate cannot benefit from rule 34.6(c)(4)'s presumption that the partial reporter's record "constitutes the entire record for purposes of reviewing the stated points or issues." *See* Tex. R. App. P. 34.6(c)(4). According to the HOAs,

7

we must therefore presume, contrarily, that missing portions of the record support the trial court's findings and judgment.

Stonegate filed a reply brief citing caselaw that cautions against a hyper-technical reading of rule 34.6(c)(1) and contending that its letter request to the court reporter and its opening appellate brief effectively sufficed to constitute the issue statement required by the rule. Stonegate also argued that the HOAs could themselves have designated other parts of the record and have not been harmed.

The day after Stonegate filed its reply brief, a supplemental clerk's record was filed at Stonegate's request, but Stonegate has never called our attention to its contents or otherwise relied on that supplement for anything.

For the reasons that follow, we agree with the HOAs that Stonegate did not comply with rule 34.6(c)(1). As a result, we must presume that the missing parts of the record support the trial court's exercise of its discretion in determining the attorney's-fee award contained in the final judgment.

## DISCUSSION

Rule 34.6(c) allows appellants to save money by ordering only those parts of the reporter's record that relate to specifically delineated appellate issues. *E.g.*, *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *2 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.). Subsection (c)(4) instructs that we "must presume that the partial reporter's record designated by the parties constitutes the entire record

8

for purposes of reviewing the stated points or issues," even if an issue complains of legal or factual evidentiary insufficiency. *See* Tex. R. App. P. 34.6(c)(4).

But to benefit from this presumption, an appellant must first satisfy subsection (c)(1). "If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." *See* Tex. R. App. P. 34.6(c)(1). Otherwise, we must presume the opposite: that the record's missing portions are relevant and that they support the trial court's judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (allowing "more flexible approach" in certain circumstances but reaffirming that complete failure to file compliant issue statement requires appellate courts to presume that record's omitted portions support trial court's judgment); *Dinkins*, 2018 WL 2248572, at *2 (noting that failure to comply with rule 34.6(c)(1) creates presumption in favor of trial-court judgment); *CMM Grain Co. v. Ozgunduz*, 991 S.W.2d 437, 439–40 (Tex. App.—Fort Worth 1999, no pet.) (affirming judgment because appellant failed to comply with rule 34.6(c)(1)).

In several situations—none of which is factually comparable to this case—the command to strictly comply with subsection (c)(1) has fallen by the wayside, including when

- the appellant filed the statement of points or issues late but more than two months before the appellee had to file its brief, thus allowing plenty of time for the appellee to add to the reporter's record if needed and to prepare its appellate arguments, *Bennett*, 96 S.W.3d at 229;

9

- the appellant did not include an issue statement in its notice of appeal or reporter's-record request but simultaneously provided notice to the opposing party that it "desire[d] to appeal only Judge Ferguson's failure to award [appellant] its taxable court costs, pursuant to Tex. R. Civ. P. 131 and Tex. Civ. Prac. & Rem. Code § 31.007," notice that was held sufficient to invoke the partial-record presumption, *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 377 (Tex. 2001);

- rather than filing the issue statement "in" the request for the partial reporter's record as the rule states, the appellant filed such a statement in a separate document, *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (disapproving of appellate court's "hypertechnical" interpretation of rule requiring statement "in" the request but otherwise affirming);

- the appellant listed its appellate issues not in the request for a partial reporter's record but in a premature notice of appeal, *Dinkins*, 2018 WL 2248572, at *3; and

- the appellant included its statement of issues in the notice of appeal rather than in the partial-record request, *Brawley v. Huddeleston*, No. 02-11-00358-CV, 2012 WL 6049013, at *2 (Tex. App.—Fort Worth Dec. 6, 2012, no pet.) (mem. op.).

What all these cases have in common is that the appellant provided a discrete statement of the issues for appeal (1) at some point in time before the appellee's brief was due, and certainly before the case was submitted, and (2) at some place in the record, even if not in the partial-record request itself.

Here, in contrast, Stonegate has never filed anything that we can fairly construe as a rule 34.6(c)(1) statement of points or issues, even given the supreme court's endorsing a "more flexible approach" when circumstances warrant. *Bennett*, 96 S.W.3d at 229. Indeed, the *Bennett* court explicitly warned that "litigants should not view our relaxation of rules in a particular case as endorsing noncompliance. While we seek to

10

resolve appeals on their merits, litigants who ignore our rules do so at the risk of forfeiting appellate relief." *Id.* at 230; *see also In re P.H.B.S.*, No. 02-02-000195-CV, 2003 WL 22026594, at *4 (Tex. App.—Fort Worth Aug. 26, 2003, no pet.) (mem. op.) (noting that "[w]hile we are not to apply Rule 34.6 in a rigid fashion, some compliance with the rule is required," citing *Bennett*, 96 S.W.3d at 230).

*Bennett* again: "There is no question that, had [the appellant] *completely failed* to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment." 96 S.W.3d at 229 (emphasis added); *see also Bailey v. Gallagher*, 348 S.W.3d 322, 325 (Tex. App.—Dallas 2011, pet. denied) (noting that "[i]n this case, the record contains no documentation of any attempt by appellants to comply with the provisions of rule 34.6 regarding a partial reporter's record. Accordingly, we must presume the missing portions of the record support the trial court's findings of fact, and we take those findings as true."); *P.H.B.S.*, 2003 WL 22026594, at *4 (observing that "[i]f only a partial reporter's record is requested and an appellant completely fails to submit a statement of points or issues, the presumption arises that the omitted portions support the trial court's findings").

## I. Stonegate did not comply with rule 34.6(c)(1), which required it to file an issue statement in order to rely on a partial reporter's record.

### A. The request for a reporter's record

It requires no hypertechnical reading to conclude that Stonegate's reporter's-record request failed to invoke rule 34.6(c)(4)'s presumption. Not only does nothing

in it purport to be an issue statement, but Stonegate's request literally asked for the entire record. The request mentioned appellate rule "34.6" generally, without referring to subsection (c)(1)'s partial-record provisions, and it asked the court reporter to "prepare, certify, and file . . . *the* Reporter's Record, *including*" counsel's attorney's-fee testimony and all exhibits admitted during that testimony.[5] The request continued by asking the court reporter to be in touch "if there is an additional fee for preparation of *the* reporter's record" and noted that "*the* reporter's record is due on April 13, 2018."

As a straightforward definitional matter, *including* does not mean *only* or *limited to*—a fact self-evident from lawyers' ubiquitous use of the phrase *including but not limited to* when (for example) propounding document requests. *See including but not limited to; including without limitation; without limiting the generality of the foregoing*, Garner's Dictionary of Legal Usage 439–40 (3d ed. 2011) (noting that "the word *including* itself means that the list is merely exemplary and not exhaustive"); *see also* Black's Law Dictionary 880 (10th ed. 2014) (defining *include* to mean "[t]o contain as part of something" and observing that "some drafters use phrases such as *including without limitation* and *including but not limited to* — which mean the same thing").

---

[5]In its reply brief, Stonegate focused solely on the language following the word *including*, writing that "[s]pecifically, on March 16, 2018, Stonegate requested the reporter prepare, certify and file with the Court, a 'full record of **the selected proceedings** . . . listed below: Transcript of the expert testimony of Kevin T. Schutte,'" etc. (bold and underlining in original). To us, omitting *including* changes the quoted material's import quite a bit.

12

Moreover, Stonegate's supplemental clerk's record, which was filed the day after Stonegate filed its reply brief, indicates that the court reporter himself understood the reporter's-record request to have been for the entire trial proceedings. Four days after Stonegate's March 16, 2018 request, the court reporter emailed his cost estimate "for preparation of the Reporter's Record in the above-referenced case." Although the estimate itself is not before us, it was apparently a total for the whole trial because later that same day, Stonegate responded, "Thank you for the invoice you provided for the Stonegate Reporter's Record. Can you please tell us what the charge would be if we just wanted **[counsel's] testimony and the exhibits admitted through his testimony?**" [Emphasis in original.] The court reporter's next email sent 30 minutes later reads as follows:

Clarification:

Are you-all requesting a "partial" appeal? The reason I ask is because if [counsel's] testimony is going to constitute the entire appellate record, you will be charged for the ORIGINAL. If the TRIAL ON MERITS is going to constitute the appellate record, then [counsel's] testimony will be charged to you at copy rate.

Up to this point, I have not understood the appeal to be a "partial appeal." Could you please clarify[?]

Seven days later, Stonegate answered the court reporter's question by writing that "Stonegate's appeal is only a partial appeal of the award of attorneys' fees. I cannot speak for the other parties that have filed a notice of appeal." This entire email

13

chain was between only the court reporter and Stonegate's counsel; none of the other parties or their lawyers was copied on any of the messages.[6]

From these March 2018 emails, Stonegate was thus aware, or should have been, that perhaps its filings had not complied with rule 34.6(c)(1)—or were at least capable of being altogether misunderstood. Because the selected portion of the reporter's record was not filed until April 17, 2018, Stonegate had more than enough time to clarify with everyone, not just the court reporter. Instead, it was not until after the HOAs filed their appellees' brief in August 2018 and raised the rule 34.6(c)(1) issue that Stonegate asked for its complete correspondence with the court reporter to be made part of our record. Regardless, we do not find this supplemental record helpful to Stonegate's argument.

But even setting aside the expansiveness of the word *including* in the reporter's-record request here, we have held that rule 34.6(c)(1)'s requirement of a statement of points or issues was not satisfied—and thus that the missing-record presumption mandated affirmance—in a situation more facially deserving of a flexible construction. *Barcroft v. Walton*, No. 02-16-00404-CV, 2017 WL 1738079, at *1 (Tex. App.—Fort Worth May 4, 2017, no pet.) (mem. op.). As we observed in that pro se appeal

---

[6]At the time Stonegate and the court reporter were trading these emails, none of the other appellants had requested either the clerk's or the reporter's record. Not until a week after the court reporter filed the incomplete reporter's record did the Sister Initiative appellants late-file their reporter's-record request.

involving a postjudgment turnover order and an incomplete reporter's record of the hearing from which that order sprang,

> [the appellant's] letter to the court reporter requesting preparation of the reporter's record sought "only that portion of the hearing held on September 19, 2016, which specifically addresses the Order for Turnover" and asked the court reporter to "submit [to the court of appeals] the record only as to the parts that concern the Order for Turnover." [Appellant] also filed a "Notice of Appeal of Order for Turnover and Designation of Record." But neither [appellant's] written request for preparation of a partial reporter's record (the portion addressing the turnover order) nor his notice of appeal included a statement of points or issues to be presented on appeal. *See* Tex. R. App. P. 34.6(c)(1); 38.1(f).

*Id.* at *1 n.2; *see also Salinas v. Kristensen*, No. 13-08-00110-CV, 2009 WL 4263107, at *1 (Tex. App.—Corpus Christi–Edinburg Nov. 25, 2009, pet. denied) (mem. op.) (noting that appellants were not entitled to rule 34.6(c)(4) presumption when request to court reporter asked for partial record consisting of "arguments of counsel and objections and rulings of the Court of the hearing held on October 5, 2007, on [Dr. Kristensen's] Motion to Enter Judgment," and appellants "did not announce in their request or in their notice of appeal any intention to limit their appeal, nor did they include in the request or notice the issues to be presented on appeal"); *Munden v. Reed*, No. 05-01-01896-CV, 2003 WL 57751, at *3 (Tex. App.—Dallas Jan. 8, 2003, no pet.) (mem. op.) (holding that appellant failed to comply with rule 34.6(c)(1) when request to court reporter said that "[w]e want only specific portions of the record to be transcribed. We would like only those portions regarding the submission to the jury of the issue of the negligence of [one of two defendants] and Plaintiff's objections to that submission

to be transcribed," and after noting that the request sought "part of the record but [did] not state the issue on appeal," applying the missing-record presumption and affirming trial-court judgment).

An example of an appeal on a partial record involving attorney's-fee testimony and in which the appellant did sufficiently state the issues is *Rosenblatt v. Freedom Life Ins. Co. of America*, 240 S.W.3d 315 (Tex. App.—Houston [1st Dist.] 2007, no pet.). There, during oral argument the appellate court had sua sponte expressed its concerns about the record, noting that although the appellant had filed only a partial reporter's record, the clerk's record did not contain a request to the court reporter that included a rule 34.6(c)(1) statement of points or issues. *Id.* at 318 n.4. After the case was argued, the appellant supplemented the clerk's record with his original correspondence to the court reporter that had asked for a partial record and designated the issues:

> [Rosenblatt] has requested only a partial Reporter's Record, consisting of the testimony of Tracy Conwell, [Rosenblatt's] counsel, because [Rosenblatt] intends to assert on appeal only that the trial court's error [sic] in denying [Rosenblatt's] request to disregard the jury's finding of zero attorneys' fees and the trial court's refusal to award $500,000 in attorneys' fees, based on the uncontroverted testimony of [Rosenblatt's] counsel [sic].

*Id.* (bracketed material in original). The Houston court concluded that this request had complied with rule 34.6(c)(1) and noted further that the appellee had gone on to designate additional material under rule 34.6(c)(2) in response; as a result, the court

presumed that the partial record "constitute[d] the 'entire' record for purposes of reviewing Rosenblatt's single issue challenging the sufficiency of the evidence." *Id.*

Unlike a case such as *Rosenblatt*, Stonegate's record request was devoid of anything approaching an issue statement; it did not even seek only a partial reporter's record.

In light of all the foregoing, we hold that Stonegate did not comply with rule 34.6(c)—neither when it filed its notice of appeal nor when it requested the reporter's record nor otherwise—by stating, as it was required to, the "points or issues to be presented on appeal."

## B. The "Issues Presented" section of Stonegate's appellate brief

In addition to arguing that its request for the reporter's record satisfied rule 34.6(c)(1), Stonegate posits that the "Issues Presented" section of its opening brief also "clearly indicates that its appeal is solely limited to the issue of attorneys' fees and contractual interest related to such fees," thus tacitly equating it to compliance with the partial-record rule.

Stonegate cites no authority holding that the "issues presented" component of an appellant's brief that rule 38.1(f) requires can retroactively satisfy an appellant's obligation under rule 34.6(c) when requesting only part of the reporter's record. *See* Tex. R. App. P. 38.1(f) ("The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). We have not located any authority

17

directly on point, but rule 34.6(c)'s purpose and mechanism both indicate that an appellant cannot wait until filing its brief to include a statement of points or issues and then claim the benefit of rule 34.6(c)(4)'s presumption.

Rule 34.6(c) contemplates an issue-statement filing that precedes the briefing period. Such a statement "gives an appellee notice of the issues to be appealed, so that it can designate [under subsection (c)(2)] additional portions of the record that may be necessary for its case." *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 38 (Tex. App.— Houston [14th Dist.] 2006, no pet.) (op. on reh'g); *see* Tex. R. App. P. 34.6(c)(2) ("Any other party may designate additional exhibits and portions of the testimony to be included in the reporter's record."); Tex. R. App. P. 34.6(c)(3) (providing that additions requested by another party "must be included in the reporter's record at the appellant's cost"). Subsection (c)(2) designations are made before the partial reporter's record is filed and thus before the briefing period even commences. *See* Tex. R. App. 38.6(a) (stating that the briefing period begins after the reporter's record is filed); *Johnson v. Alcon Labs., Inc.*, 149 S.W.3d 653, 654 (Tex. App.—Fort Worth 2003, no pet.).

If an appellant relying on a partial record could wait until its opening brief to reveal its appellate issues as Stonegate implies, rule 34.6(c)(1)'s issue-statement requirement would be effectively nullified—not to mention that appellees would be prejudiced by being forced to guess the appellate issues attending a partial record and by being prevented from intelligently designating additional portions of the reporter's

18

record under rule 34.6(c)(2). *See Gardner v. Baker & Botts, L..LP.*, 6 S.W.3d 295, 297 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (noting that without a specific statement of the issues, appellee is "left to guess which additional portions of the evidence should be included" in the reporter's record); *see also Garcia v. Sasson*, 516 S.W.3d 585, 590 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (noting that the "statement of issues on appeal need not be included in the request for the reporter's record as long as the statement is filed in time for the other parties to designate any additional, relevant portions of the record and to prepare their appellate briefs").

Additionally, an appellee would have only 30 days after the appellant's brief's filing to request other parts of the record and also research and file its own brief. *See* Tex. R. App. 38.6(b) (providing 30-day deadline for appellee's brief). Appellees would now have to pay for added record requests, too, because they would be considered rule 34.6(d) "supplementations" and not rule 34.6(c)(2) "designations." *See Alcon Labs.*, 149 S.W.3d at 654 (interpreting rule 34.6 to mean that appellees are not required to pay for (c)(2) designations but must pay for (d) supplementations because they are made after the partial reporter's record has been filed).

We hold that, without something more (and much earlier), the issues-presented section of an appellant's brief cannot be used in the first instance as a rule 34.6(c)(1) issue statement.

## II.   The HOAs' ability to supplement the record is irrelevant.

Stonegate also argues that if the HOAs had wanted to "expand" the appellate record, they had "ample time to request a supplementation," and that, in any event, the HOA appellees have not claimed any prejudice.[7] But because Stonegate did not include a rule-compliant statement of issues at all, its attempt to shift blame to the HOAs is misplaced. *See Garcia*, 516 S.W.3d at 591.

In *Garcia*, the appellant had provided only a generalized notice of her appellate complaints in connection with requesting a partial record, stating that she "desire[d] to appeal on deemed admissions and on other grounds." *Id.* Replying to the appellee's argument that her failure to comply with rule 34.6(c)(1) deprived her of the (c)(4) presumption, Garcia argued, as does Stonegate, that even if her attempt to limit the appellate issues was deficient, the appellee could not show harm because he could have "supplement[ed] the record if he believed such supplementation was necessary on appeal." *Id.* The court of appeals was unpersuaded:

> We reject this argument. The fact that Rule 34.6(c)(2) allows other parties to designate additions to the partial reporter's record does not relieve a party of her own burden, as the party asserting that the trial court erred, to either comply with the requirements of Rule 34.6(c) or to otherwise provide a record adequate to demonstrate error on the part of the trial court.

---

[7]Stonegate asserts that "Appellee's brief is devoid of any assertion that Stonegate's alleged delay in submitting its 'Issues Presented' prevented Appellants [sic] from identifying the relevant issues, supplementing the record, or from having adequate time to prepare their appellate arguments."

*Id.*; *see also Aldous v. Bruss*, 440 S.W.3d 90, 93–94 (Tex. App.—Houston [14th Dist.] 2012, order) (Busby, J., dissenting) (observing that if an appellant does not file a rule 34.6(c)(1) issue statement at all, an appellee "may choose to rely on the presumption [that the missing parts of the record support the judgment] rather than designating additional portions of the record"), *disp. on merits*, 405 S.W.3d 847 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

To similar effect on different facts is *Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816 (Tex. App.—Houston [14th Dist.] 2005, no pet.). There, four months after the appellees' briefing was completed and shortly before the case was submitted, the appellant belatedly acknowledged—as the appellees' brief had pointed out—that she had not included a statement of issues under rule 34.6(c)(1) when requesting a partial record; she then moved to supplement the record with additional portions as well as with her new letter to the court reporter now containing an issue statement. *Id.* at 818.

The appellate court declined to accept the late-filed statement of issues, thus presuming that the omitted portions of the record were relevant and supported the judgment. Although recognizing the supreme court's instruction in *Bennett* to take a "more flexible approach when 'the appellee has not established any prejudice from a slight relaxation of the rule,'" *id.* at 819 (quoting *Bennett*, 96 S.W.3d at 229), the *Mason* court noted the obvious difference between a case like *Bennett* in which the issue statement, though late, was filed well before the appellee's brief was due, and the

21

situation before it: "In contrast, Mason did not seek leave to file her statement of the issues until almost nine months after it was due" and four months after the appellees had filed their brief. *Id.* at 820.

Not mincing words, the court wrote that it "cannot condone such an egregious flouting of the rules of appellate procedure," reasoning that "[p]ermitting Mason to file her statement of issues at this late date would effect more than the 'slight relaxation of the rule' the Supreme Court described *Bennett* as being—it would render it meaningless." *Id.*

We similarly conclude that, if an appellant fails to include an issue statement with, in, or around a request for less than the entire record, whether an appellee has shown or can show any harm is beside the point.[8]

## III.  Stonegate's failure to comply requires us to affirm.

Had Stonegate effectively and timely provided a statement of points or issues, we would presume that the partial reporter's record "constitutes the entire record for purposes of reviewing the stated points or issues." Tex. R. App. P. 34.6(c)(4). Because Stonegate did not do so, we presume that other parts of the record are relevant and support the trial court's judgment. *See Bennett*, 96 S.W.3d at 229; *Tran v. Tran*, No. 01-07-00662-CV, 2008 WL 2930190, at *2 (Tex. App.—Houston [1st Dist.] July 31, 2008, no pet.) (mem. op.) (in appeal on partial reporter's record, affirming trial court's

---

[8]We reiterate that Stonegate's record request was not, on its face, one for a partial record anyway.

having granted motion to disregard jury's finding awarding attorney's fees to appellant because clerk's record did not include a statement of points or issues from appellant and applying missing-record presumption and thus "[could not] conclude that the trial court erred in denying [appellant] recovery of attorney's fees").

By prevailing on its contract-breach claim, Stonegate was entitled to recover attorney's fees under section 38.001 of the civil practice and remedies code. *See Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015); Tex. Civ. Prac. & Rem. Code Ann. § 38.001. The trial court did award attorney's fees to Stonegate but in an amount smaller than Stonegate asked for. From the limited record before us, we cannot know why the trial court found that a greater award would not have reflected reasonable and necessary fees and, as the trial court also found, would in fact have been "unconscionable."

As the supreme court has instructed, there is "no question" that rule 34.6 requires us to affirm the trial court's judgment, because Stonegate "completely failed to submit [its] statement of points or issues." *Bennett*, 96 S.W.3d at 229–30 (also observing that "litigants who ignore our rules do so at the risk of forfeiting appellate relief"); *see also Cantu v. Fed. Nat'l Mortg. Ass'n*, No. 02-11-00293-CV, 2012 WL 955363, at *3 (Tex. App.—Fort Worth Mar. 22, 2012, no pet.) (mem. op.) (holding that appellant could not show abuse of discretion in trial court's award of attorney's fees when appellant "neither filed a complete record on appeal nor complied with the partial reporter's record provisions of rule 34.6"); *Davis v. Kaufman Cty.*, 195 S.W.3d

847, 851 (Tex. App.—Dallas 2006, no pet.) (quoting *Bennett* and holding that because appellant did not file a statement of points or issues, appellate court "must apply the presumption that the omitted portions of the record support the trial court's judgment" and accordingly "must overrule appellant's challenge to the sufficiency of the evidence" in connection with attorney's-fee award).

As a result, we have no choice but to overrule Stonegate's issues on appeal.

## CONCLUSION

Having overruled Stonegate's issues, we affirm that part of the trial court's judgment awarding Stonegate its attorney's fees.

/s/ Elizabeth Kerr

Elizabeth Kerr
Justice

Delivered:  July 30, 2019

24